GOODHUE and others vs. THE TOWN OF BELOIT and the CITY OF BELOIT.

*Contract construed—Promise to "donate" money for a consideration.—*TOWNS *: Power of town to vote money for construction of bridge " for the public use," by private parties having license to build such bridge over a navigable stream.—Liability of city for debts of the town out of whose territory it is erected.*

1. The electors of a town, at a town meeting, resolved to "donate $1,000" to the plaintiffs "for the use of a bridge" over Rock river at a specified point in the town, provided defendants would, by a day named, "erect a substantial bridge for the public use at that point."  *Held,*

Goodrich and others vs. The Town of Beloit and The City of Beloit.

(1.) That although the word "donate" usually imports a gift, yet in connection with the words following it in said resolution it expresses an agreement to pay the plaintiffs a consideration for constructing a bridge for the public use.

(2.) That the bridge constructed pursuant to the resolution must be regarded as *dedicated* to the public use, and the municipal corporation in which it is situated had thenceforth a right to publicly use, keep and maintain the same.

2. Rock River being a navigable stream, over which a bridge could not be built without legislative license, and defendants having previously acquired such a license, the town, under secs. 1 and 2, ch. 12, R. S. 1849, (which empowered towns to raise money for building bridges, &c., and to make all contracts necessary for the convenient exercise of their corporate powers), could enter into the contract embodied in said resolution.

3. Afterwards a part of the territory of said town was organized into a city, the law providing that the business of the town, up to the commencement of the city government, should be settled by the town as thereafter constituted, and "the amount of funds remaining or debts due," as the case might be, should be apportioned between said town and city according to the amount of taxable property in each, "such settlement to be made with the city council by the supervisors of the town." *Held,* that the town was, and the city was not, liable to the plaintiff for the whole debt.

4. Whether the plaintiffs, by a proceeding in equity, might not have the court determine the amount which the town and city ought respectively to pay, as between themselves, and have a judgment against each for it proportion, is a question not raised by the pleadings in this case.

APPEAL from the Circuit Court for *Rock* County.

The complaint alleges the following facts: By an act of the legislature approved March 31, 1856, it was provided that certain territory, then a part of the town of Beloit, from and after the first Tuesday of May, 1856, should be erected into the city of Beloit, with the powers usually pertaining to municipal corporations, and said territory has ever since said last mentioned day constituted, and now constitutes, the *City of Beloit.* Before that act took effect, however, to wit, on the 15th of April, 1856, the *Town of Beloit,* at its annual town meeting, voted to build a new bridge over Rock River within the limits of the proposed city of Beloit, upon the site of the only bridge then existing over said river within said town, and upon plans of such a character that it would require until the end of the following fall to complete such new bridge. The river divided pretty nearly equally the population of the proposed city, and the

business, social, educational and ecclesiastical relations between the people of the town on the east and those on the west side were very intimate and important, and the river was always impassable for footmen, and often impassable for vehicles, so that it was indispensable that there should be a continuous connection by bridge between the two sides. The plaintiffs, who owned real estate on the west side of the river, which would be more accessible to them if a bridge were built across the river within said town and near the south line thereof, connecting South Bridge Street, on the east side of the river, with State Street on the west side, (which bridge would greatly accommodate the town of Beloit, and the public generally, as well as plaintiffs), were willing to bear the largest part of the expense of erecting the same, and "had in contemplation the building of such bridge at some not remote period, provided some reasonable pecuniary assistance should be rendered in some way, so that the whole burden of furnishing such a convenience to the public should not fall upon them;" and this fact was widely known by the electors of said town. Accordingly, at said annual town meeting on the 25th of April, 1856, the following resolution was adopted: "*Resolved*, That the town of Beloit donate one thousand dollars to *William T. Goodhue and others* for the use of a bridge at or near the state line, provided they will erect a substantial bridge for public use at said point, to be finished by the first day of July next." By the terms " *William T. Goodhue and others*," were meant the plaintiffs and no other persons. On the passage of this resolution, plaintiffs announced to said meeting that they accepted the offer thus made; and they immediately set about building said bridge, and completed it within the time limited, at an expense of about $4,000 ; and from that time to this, said bridge has been for public use, and all the inhabitants of the town and city of Beloit, and the public at large, have had the free and uninterrupted use of the same, and the

*City of Beloit*, defendant, has assumed, and by the consent and premission of the plaintiffs, and their dedication of it to the public use, has had the entire control of said bridge, and has made needed repairs thereto from the time of its completion and occupancy as aforesaid to the present time; and the plaintiffs have not claimed or exercised any right to such bridge as against the defendants or the public. The east end of the bridge abutted upon South Bridge Street, one of the public streets of the *City of Beloit;* on the west end, the land on which it abutted belonged to *William T. Goodhue*, who, upon the completion of the bridge, opened over said land a street connecting with State Street aforesaid, and dedicated the same as a public highway, and the city of Beloit accepted such dedication, and has ever since used and worked said street as such highway. Rock River being a meandered stream, the plaintiffs obtained authority from the legislature, by act approved March 28, 1856 (Pr. & L. Laws of 1856, ch. 263), to construct a bridge over it at the point where they afterwards built the bridge in question. Upon these facts plaintiffs claim that the defendants became indebted to them on the 1st of July, 1856, in the sum of $1,000; and, demand and refusal of the debt being alleged, a judgment for that amount is here sought.

The defendants demurred separately to the complaint, as not stating a cause of action; and appealed from orders overruling the demurrers.

*A. A. Jackson*, for the *Town of Beloit*, argued that the resolution was for a gratuitous gift (1 Blacks. Com., 60; Chitty on Con., 80; *Martin v. Hunter*, 1 Wheat., 326; Webster's Dic., "Donate;" 1 Bouv. Dic., 445); and this is evident not only from the word used, but from the absence of any statement as to the time of payment, the term for which the public might use the bridge, the size &c. of the bridge, the party by whom it should be kept in repair, &c. 2. It is obvious from the complaint that the building of the bridge was a private enterprise. The

powers possessed by towns in this state in 1856 are defined by ch. 12, R. S. of 1849, and do not include the power to vote money for any private enterprise. The town had only such powers as were given it by statute. *Rumford v. Wood*, 13 Mass., 193 ; 22 Barb., 634 ; *Anthony v. Adams*, 1 Met., 284 ; *Cornell v. Guilford*, 1 Denio, 510 ; *Booth v. Woodbury*, 5 A. L. Reg., 205 ; *Abendroth v. Greenwich*, 29 Conn., 363 ; *Willard v. Killingworth*, 8 Conn., 254 ; *Hodges v. City of Buffalo*, 2 Denio, 110 ; *The People v. Trustees &c.*, 5 Wend, 211 ; *Riley v. City of Rochester*, 9 N. Y., 64—71 ; *Bussey v. Gilmore*, 3 Me., 191 ; *Colton v. Hanchett*, 13 Ill., 615. Regarded as an attempt to make a contract, the resolution was void. 3. The alleged *dedication* of the bridge after the 1st of July, 1856, could not affect the *town* of Beloit, because the bridge was not then within the jurisdiction of the town, and it had therefore no power to accept such a dedication. *Riley v. Rochester*, 9 N. Y., 64 ; *Underwood v. Stuyvesant*, 19 Johns., 181. 4. Rock River is a navigable stream, and the town had not then, and never has obtained permission from the legislature to build or maintain a bridge across it. It could not, therefore, lawfully build or maintain such a bridge, and a vote to raise money for that purpose would be of no force.

*Todd & Converse*, for the *City of Beloit:*

1. This is an action at law, for a money demand upon contract. The city was not a party to the contract. There is no provision in the charter giving parties with claims against the town any remedy against the city, except in the cases provided for in secs. 15 and 16, ch. 10, which have no application here. 2. Admit that by a fair construction of the offer contained in the resolution, plaintiffs were not only to erect the bridge within the time designated, but were to dedicate it and the land of *Goodhue* on the west side on which the bridge abutted, to the public use as a highway, still the offer and its acceptance constituted a parol contract which was void by the statute of

frauds ; and it is not pretended that the town has by its offi-cers in any other manner accepted the dedication. R. S., ch. 106, sec. 6 ; 2 Hill, 485 ; 1 Johns. Ch., 131 ; 2 Barb. Ch., 221 ; 6 Wend., 461 ; 11 Mass., 533 ; 1 Taunt., 402 ; 7 Johns., 205. 3. The resolution was void because it was merely a proposition to *donate* money ; and because the town had no power to con-struct bridges except under the supervision of the supervisors as provided by statute, nor had it power to erect such a bridge except within the limits of a highway, and at the time the res-olution was passed there had been no dedication of a way across the bridge, or over *Goodhue's* lot.

*R. H. Mills*, for respondents, argued that though the word *donate* is equivalent to *give*, neither of of them necessarily im-ports a "gift" in the legal sense ; but a promise to give or do-nate money for a valuable consideration constitutes a contract. The literal interpretation of a word is to be disregarded when inconsistent with the obvious intention of the parties. 18 N. Y., 363 ; 8 id., 442 ; 14 id., 611. 2. As to the authority of the town of Beloit to enter into the contract sued on, counsel cited R. S. 1849, ch. 12, secs. 1, 2, 3 ; *Miller v. Milwaukee*, 14 Wis., 642 ; *Beaver Dam v. Frings*, 17 id., 398 ; *Morey v. Newfane*, 8 Barb., 645 ; *School Dist. v. Wood*, 13 Mass., 193. 3. "A cor-poration is not limited to the exercise of the powers specifically granted, but possesses in addition all such powers as are either necessarily incident to those specified, or essential to the pur-poses and objects of its corporate existence." *Le Couteulx v. Buffalo*, 33 N. Y., 333 ; *Ketchum v. Buffalo*, 14 id., 358, and au-thorities before cited. 4. The consideration for the promise was sufficient. *Eycleshimer v. Van Antwerp,*, 13 Wis., 546. 5. Having had the advantage of the contract, defendants can-not deny their authority to contract. BACON, J., 21 N. Y., 124 ; COMSTOCK, J., 22 id., 258. 6. The resolution required, and plaintiffs agreed, that they would build a good and substantial bridge at the specified place by the first of July ; and that

when completed, it should be for public use, or, in other words, dedicated to public use. The agreement to dedicate, followed by the act of dedication, passed the use to the public irrevocably, and no writing was necessary either to divest plaintiffs of their exclusive right, or to fix the liability of defendants. *Baker v. Braman*, 6 Hill, 47; *Noyes v. Chapin*, 6 Wend., 461; *People v. Goodwin*, 5 N. Y., 568; *Storms v. Snyder*, 10 Johns., 109; *Thomas v. Dickinson*, 12 N. Y., 364; *Embury v. Conner*, 3 id., 511. 7. As to the liability of the city, counsel relied upon sec. 12, ch. 10 of the original charter (Laws of 1856, ch. 452), and sec. 15, ch. 10 of the amendatory act, ch. 176, Pr. & L. Laws of 1857. The city is a necessary party. R. S., ch. 122, sec. 22; Laws of 1864, ch. 168; *Giles v. Lyon*, 4 N. Y., 600.

DOWNER, J.  1. It is contended that the resolution set out in the complaint was to *donate* a thousand dollars to the plaintiffs, and that the town had no authority to make a donation. " Donate " generally means giving gratuitously, or without any consideration; but in this instance the language of the resolution shows it was giving, or agreeing to give, for a consideration, and so both the electors and plaintiffs must have understood it.

2. It is, however, urged, that if it was intended to make a contract with the plaintiffs, still this action cannot be maintained, because the building of the bridge was a mere private enterprise. This position is untenable; for the plaintiffs, by the resolution, are entitled to the thousand dollars only on the condition that they, within the prescribed time, erected a substantial bridge for the *public use*, connecting South Bridge Street on the east side of the river with State Street on the west side.

3. Again, it is contended that the town had no authority to make the contract. Chap. 12, sec. 2, R. S. 1849, provides that

the qualified electors of each town shall have power to raise money for the repair and building of roads and bridges; and section one gives the town power to make all contracts necessary or convenient for the exercise of its corporate powers. It clearly had power to make contracts for building bridges. But Rock River is one of the streams returned navigable by the United States surveyors; and, by chapter 34, R. S. 1849, is declared navigable to such extent that no dam or bridge may be made in or over the same without the assent of the legislature. Authority was given by the legislature, by chap. 263, Pr. Laws of 1856, to the plaintiffs, their heirs or assigns, to construct and maintain the bridge; and if the allegations of the complaint are true, the bridge and right to construct and maintain it have been and were intended to be by the plaintiffs transferred to and vested in the town, or in the new corporation embracing the territory within which the bridge is. It is difficult to see how a bridge which is not a toll bridge is to be erected for the public use, without being dedicated to the public. We are inclined to construe the resolution as requiring a dedication to the public; and if it did, as soon as the bridge was constructed and opened for public use under the resolution, it was dedicated to the public, and the town or city acquired thereby the right to publicly use, keep and maintain the bridge. A good cause of action is set out in the complaint against the town.

4. Ought the demurrer of the city to the complaint to be sustained? The complaint is framed as if both town and city were jointly liable for the whole debt. Section 12, chap. 10 of the city charter (Pr. Laws of 1856, page 990), provides that "the town business of the present town of Beloit, up to the time of the commencement of the city government under this act, shall be settled by the town as constituted by this act, and the amount of funds remaining or debts due, as the case may be, proportioned between the said town and city of Beloit according to the amount of taxable property belonging to each,

as taken from the last assessment roll; such settlement to be made with the city council by the supervisors of said town." It is obvious that the town is by its contract liable for the whole debt, and we fail to perceive in this provision any thing to the effect that the city shall be also liable for the whole; and we are inclined to the opinion that it was the intention that the town should settle the debts against it, and collect from the city the proportion it ought to pay. Whether, on principles of equity, the plaintiffs, on a complaint properly framed, might not have had the court determine the amount each ought in equity, as between themselves, to pay, and have a judgment rendered against each for its proportion, is unnecessary for us now to determine, as that question is not properly before us. It is clear that the plaintiffs are not entitled to a judgment for the whole amount against both city and town.

*By the Court.*—So much of the order of the circuit court as overrules the demurrer of the town, is affirmed; and that part overruling the demurrer of the city, is reversed.