SCHRIBER, Respondent, vs. THE TOWN OF LANGLADE, Appellant.

SCHRIBER, Appellant, vs. THE TOWN OF LANGLADE, Respondent.

*September 24 — October 12, 1886.*

TOWNS: BOUNDARIES: LIABILITIES. *(1) Annexation to another county. (2) Ceasing to elect officers, etc. (3) Validity of order changing boundaries: Collateral proceeding. (4) Indian reservations. (5, 6) Annexation to another town. (7) Detachment of part of territory.*

1. If the whole of a town is detached from one county and attached to another, it becomes immediately a town of the latter county, and its liabilities remain unimpaired.

2. When a town fails for several years to elect officers and discharge the functions of an organized town, such neglect does not destroy its liability for debts previously contracted, but when it again assumes the functions of a town such liability may be enforced, even though such resumption of its functions and election of new officers take place under a special law providing therefor.

3. Under ch. 54, Laws of 1883, the validity of an order of the county board changing the boundaries of a town cannot be questioned in a collateral proceeding, except, perhaps, when the order is one which the board had no authority, under any circumstances, to make.

4. An Indian reservation may be included within the boundaries of a town.

5. When the whole territory of one town is annexed to another, the annexed town is destroyed and its assets and liabilities become assets and liabilities of the town to which it is annexed, unless otherwise provided in the statute or ordinance making the annexation.

6. But this rule does not apply when the annexation is merely for a temporary purpose, as until the electors can organize a town government by the election of officers.

7. When a part of the territory of a town is detached therefrom and annexed to another town or created into a new town, the old town remains liable for all debts existing at the time such territory is detached, and none of such debts become a charge against the town to which the territory is annexed or against the new town created, unless specially so provided in the statute or ordinance

making the change. And the fact that the territory detached had formerly been a separate town and had then incurred the debts in question, does not alter the rule.

APPEALS from the Circuit Court for *Langlade* County. The facts will sufficiently appear from the opinions.

For the plaintiff there was a brief by *Houghton & Haddock*, and oral argument by *Mr. Houghton* and *C. H. Van Alstine*. They contended, *inter alia*, that the present town of *Langlade* is liable upon the orders in suit. The temporary, provisional annexation to the town of Polar did not affect the liability. *Ryan v. Evans*, 49 Tex. 364; *Midland v. Roscommon*, 39 Mich. 424; *Clark v. Goss*, 12 Tex. 395; *Haynes v. Washington Co.* 19 Ill. 66; *State ex rel. Wise v. Button*, 25 Wis. 109. The pretended merger with the town of Richmond does not relieve it. (1) There is no proof of such merger. The ordinance was not published. *Smith v. Sherry*, 54 Wis. 114, 121. And as a matter of fact the territory did not continue with Richmond for the period of two years. Ch. 54, Laws of 1883, is inapplicable. The question is not as to the validity of the ordinance, if there was one, but whether the defendant, having attempted to show a merger, has shown any ordinance until he has proved publication. (2) The ordinance was not valid. It attempted to unite into one organization two sections of territory totally separated by the Menominee reservation. *C. & N. W. R. Co. v. Oconto*, 50 Wis. 189; *Smith v. Sherry*, id. 210; 1 Dillon on Mun. Corp. (3d ed.), secs. 183, 185, note. (3) The annexation would not affect the liability of the defendant, were it valid. It was only temporary, lasting less than two years, and if the rules applicable to a permanent consolidation of towns were applied here, the result would be that the town of Langlade has unloaded all its debts upon the town of Richmond, and come forth with all the property within its limits. As a matter of law the defendant is the successor of the town which issued the orders. In determining whether or not the new corporation is sub-

stantially the old one, resort must be had to the terms of the legislation, and they must be given a construction consistent with the legislative intent. Angell & A. on Corp. sec. 780; 1 Dillon on Mun. Corp. sec. (55) 89; *Bellows v. H. & A. Bank*, 2 Mason C. C. 31, 44. See *O'Connor v. Memphis*, 6 Lea (Tenn.), 730; *Trustees v. Erie*, 31 Pa. St. 515; *Marysville v. Shultz*, 3 Dana (Ky.), 10; *Frank v. San Francisco*, 21 Cal. 668; 1 Dillon on Mun. Corp. (3d ed.), secs. 85, 171–3, 176; *Broughton v. Pensacola*, 93 U. S. 266; *Ross v. Wimberly*, 60 Miss. 345; *Dist. No. 3 v. Macloon*, 4 Wis. 79; *Shankland v. Phillips*, 3 Tenn. Ch. 556; *Mobile v. Watson*, 116 U. S. 289; *Olney v. Harvey*, 50 Ill. 453. The intent to abolish the town of Langlade nowhere appears. Such intent must be clear and unequivocal. The mere neglect or failure to elect officers will not dissolve the corporation. 1 Dillon on Mun. Corp. (3d ed.), secs. 166, 168; *Harris v. Nesbit*, 24 Ala. 398; *Scaine v. Belleville*, 39 N. J. Law, 526. And the legislature will not, in any case, be allowed to change, modify, or annul the charters of municipal corporations, or repeal the acts creating them, so as to impair the obligation of contracts or destroy the remedies of creditors. 1 Dillon on Mun. Corp. sec. 170; *Broughton v. Pensacola*, 93 U. S. 266; *Mount Pleasant v. Beckwith*, 100 id. 514; *State Board v. Aberdeen*, 56 Miss. 518; *Milner's Adm'r v. Pensacola*, 2 Woods, 632; *Mobile v. Watson*, 116 U. S. 289; *People ex rel. Benham v. Williams*, 8 Cal. 97. The continuity of existence may be further sustained on the principle of reviver. *Scaine v. Belleville*, 39 N. J. Law, 526; *Sutton M. Co. v. Sutton*, 108 Mass. 106.

*Geo. W. Latta*, attorney, and *Geo. G. Greene*, of counsel, for the defendant.

Upon the appeal by the defendant the following opinion was filed:

TAYLOR, J. The respondent brought his action against the present town of *Langlade*, to recover the amount of

certain town orders set out in his complaint, and which he alleges were lawfully issued by said town, as the same was organized in 1880 and 1881 at the time said orders were issued. He also alleges that he has duly presented said orders to the treasurer of said town for payment, and that payment was refused, and therefore demands judgment, etc.

The answer admits that *Langlade* is a duly organized town, and that it was organized under and by virtue of ch. 137, Laws of 1885. There are various other admissions and allegations in the answer which are unnecessary to state here.

The action was tried by the court without a jury, and after the trial the court found, among other things, the following facts: That previous to the enactment of ch. 7, Laws of 1881, there was a town of Langlade duly organized as a town, in the county of Langlade, and acting as such; that such town, so organized and acting, was composed of the same territory which composes the present town of *Langlade* as organized under ch. 137, Laws of 1885, and included, in addition thereto, townships 31, 32, 33, and 34, of range 12 E.; that by ch. 7, Laws of 1881, these last-named townships were detached from the town of Langlade, and created a separate town by the name of Polar, and that the same ch. 7, Laws of 1881, detached the remaining territory of the town of Langlade from Langlade county, and attached the same to the county of Shawano; and that the act of 1881, detaching a part of the territory of the town of Langlade and creating the town of Polar, made no provision for the adjustment, division, or settlement of any debts, credits, and liabilities of and between the towns of Polar and Langlade.

The court also finds that after the territory now composing the town of *Langlade* was detached from the county of Langlade, in 1881, and attached to the county of Shawano, no election for town officers was had in said town, and no

officers were elected by the electors of said town in the years 1881, 1882, 1883, 1884; and also finds that by virtue of ch. 137, Laws of 1885, the territory which composed the town of Langlade when it was detached from the county of Langlade and attached to the county of Shawano, was then detached from Shawano county, and again made a part of the county of Langlade, and temporarily attached to the town of Polar, in said county of Langlade. Sec. 1, ch. 137, Laws of 1885, in express terms detaches from the county of Shawano and attaches to the county of Langlade the same territory that was detached from the county of Langlade and attached to the county of Shawano by ch. 7, Laws of 1881. Sec. 2 declares that said territory is attached to the town of Polar, in Langlade county, and sec. 4 reads as follows: "The electors residing within the territory hereby attached to Langlade county, and to the town of Polar in said county, may organize as a town, to be known as the town of *Langlade*, by holding a town meeting on the first Tuesday of April, 1885, and the election and qualification of town officers for said town for said year 1885. Said election shall be held at the school-house in New, on section 27, town 33, range 13, east. If said town meeting is held, and the organization of said town of *Langlade* completed by the election and qualification of officers for said town for the year 1885, then said territory shall constitute a town, under the laws of this state, and the same shall be known as the town of *Langlade;* otherwise said territory shall remain a part of the said town of Polar."

The court further found that the electors residing in said territory did hold a town meeting in compliance with the provisions of said ch. 137, Laws of 1885, on the first Tuesday of April, 1885, and elected proper town officers, who qualified as such; and that such territory then became the present town of *Langlade*, against which this action is brought.

There are other findings and facts showing that in 1880 and 1881, during which time the orders described in the complaint were issued, there were town officers in the then town of Langlade, duly elected, qualified, and acting; and there is also a finding that on the 10th day of May, 1879, the electors of said town duly voted a tax upon the property of said town for the sum of $4,800, to be raised the ensuing year, viz., $2,000 for building school-houses, $1,800 for roads and town expenses, and $1,000 for building bridges; and that on the 6th day of April, 1880, at a special town meeting held in and for said town, the electors duly voted a tax for the sum of $5,500, to wit, $2,200 for schools and building school-houses, $300 for bridges, and $3,000 for town expenses. The court also finds certain facts in regard to the auditing and allowing of the claims for which the orders in question were issued, which, in the view we have taken of the case, become immaterial in the decision of this case.

The court found, as conclusions of law, that in 1879, 1880, and 1881 the town of Langlade was duly organized and capable of contracting town indebtedness; that neither the creation, in 1881, of the town of Polar from part of the territory of said town of Langlade, nor the annexation of the said town of Langlade by ch. 7, Laws 1881, to the county of Shawano, effected any change in its corporate organization, existence, and character, or impaired any of its powers and liabilities, and that the annexation of the town of Langlade by ch. 137, Laws 1885, to the town of Polar, was a mere temporary annexation, until it could duly organize by the election of town officers as provided in said chapter; and that such temporary annexation to the town of Polar effected no change in the corporate organization, existence, and character, and impaired none of its existing powers and liabilities; and that the failure of the town to continue its organization, and to perform the usual functions of a corporate town during a part of the year 1881,

and the years 1882, 1883, and 1884, did not impair any existing indebtedness of said town, lawfully contracted during its active existence during the years 1879, 1880, and to the month of April, 1881.

The appellant excepted to many of the findings of fact and conclusions of law. The only exceptions we deem material are the following: " The defendant excepts to the failure of the court to find that the defendant town of *Langlade* was first created subsequently to ch. 137, Laws of 1885, and pursuant to the provisions of said chapter; and to the failure of the court to find that on the 25th of May, 1883, the county board of Shawano county duly attached all the territory embraced in the town of Langlade as organized when the same was attached to the county of Shawano, and also as organized under ch. 137, Laws of 1885, and now in such town, to the town of Richmond, in said Shawano county; and that in making such annexation no provision was made for any apportionment of any debts or liabilities;" and to the failure to find that the territory annexed to the town of Richmond, as aforesaid, remained in and a part of said town of Richmond, absolutely and for all purposes, until its annexation to the town of Polar, by ch. 137, Laws of 1885.

Among others, the defendant filed the following exceptions to the conclusions of law found by the court, viz.: " The defendant excepts because the court failed to find that whatever town embraced the territory of the present town of *Langlade*, at the time and prior to the passage and taking effect of ch. 7, Laws of 1881, such territory was by said act taken from said town, and annexed to Shawano county; and, if the town from which said territory was taken contained no other territory, such town was by said annexation extinguished;" and because the court failed to find that by the annexation of the territory constituting the present town of *Langlade* to the town of Richmond, in 1883, the

said town of Richmond became exclusively subject to all the liabilities of the town of Langlade existing at the time of such annexation, if any such town then existed; and for the failure of the court to find that the defendant is not liable upon any of the orders in question.

The learned counsel for the respective parties have discussed, at considerable length, questions connected with the issuing of the town orders upon which the action is brought; but as we have come to the conclusion that the plaintiff is not entitled to recover against the present town of *Langlade* upon these orders, admitting that they were lawfully issued by the former town, it becomes unnecessary to consider that part of the case.

After a careful consideration of the findings of fact and conclusions of law as made by the learned circuit judge, were there nothing in the case except the facts found by the court we should be inclined to hold that the defendant town would be liable for all orders lawfully issued by the former town of Langlade. If, as found by the court, after the orders were duly issued the whole of the former town of Langlade was detached from the county of Langlade and attached to the county of Shawano, such town organization would not be destroyed by that act, but the territory so attached to Shawano would immediately become a town of said county of Shawano, and all its liabilities would remain unimpaired. And if it failed for three or more years to elect officers and discharge the functions of an organized town, such neglect on its part might prevent, for the time being, the enforcement of the claims against such town, but it could not destroy its liability, and whenever it again assumed the functions of a town, by the election of its proper officers, an action could be maintained against it to recover the debts it had previously contracted. Nor do we think it changes the result that the new officers elected are elected under the provisions of a new act directing or au-

thorizing such election.  That a town is not destroyed by transferring it from one county to another it seems to us was determined by this court in the case of *Cathcart v. Comstock*, 56 Wis. 590, 598.  It would seem an absurdity to hold that a town could pay all its debts and liabilities by simply neglecting to elect the proper officers to perform its functions as a town for one or more years, and then reorganize the same territory by the election of officers under the general laws of the state, or under a special act authorizing or directing such election.  When a case of that kind is presented, we think we should have very little hesitation in sanctioning the rule held by the learned circuit judge in the case at bar.

The real controversy in this case does not appear in the finding of the court, but it does appear from the pleadings and evidence in the case, and by the exceptions of the defendant to the refusal or neglect of the learned circuit judge to find a fact which appears from the answer and the evidence on the part of the defendant, viz., that after the former town of Langlade had become a part of the county of Shawano, the whole territory of that town was attached to the town of Richmond, in said county of Shawano.  It is claimed on the part of the appellant that the county board of the county of Shawano attached all the territory constituting the town of Langlade, in said county, to the town of Richmond, another town in said county.  On the part of the learned counsel for the respondent it is contended that the order of the county board of said county, attaching such territory to the town of Richmond, is void for two reasons: (1) Because it does not appear that the order of the board was published as required by law; and (2) because the territory so attempted to be attached to the town of Richmond is entirely separated from said town by the Menominee reservation.

In answer to the first objection made, that there is no

evidence of the publication of the ordinance which changes the boundaries of the town of Richmond so as to include that territory in said town, it is urged that the plaintiff cannot attack the validity of the act of the board in changing the boundaries of the town in this collateral proceeding; that the board having passed the ordinance, and the town of Richmond having for two years exercised town authority over the territory as a part of said town, the validity of the act attaching the territory cannot be controverted in this action. See ch. 54, Laws of 1883. Sec. 1 of this act, after providing that when the county board shall pass any ordinance under the provisions of ch. 36, R. S. 1878, the county clerk shall immediately cause the same to be published, etc., proceeds as follows: " But every town shall be considered and held to be and to have been duly organized which has exercised, or shall hereafter exercise, the powers, functions, and franchises of a town for a period of two years. The validity of any order, ordinance, or proceeding, purporting to organize or set off any new town, or to change the boundaries of any existing town or towns, may be tested by a *certiorari*, or any other proper proceeding, brought directly for the purpose of vacating such order, ordinance, or proceeding, by a proper officer, or by any person owning taxable property in any town purporting to be so organized, set off, enlarged, or diminished, at any time within two years after the date of such order, ordinance, or proceeding, or within sixty days after the publication of this act, in cases where the two years above limited shall have expired prior thereto, or shall expire within said sixty days, and not thereafter. No such order, ordinance, or proceeding shall in anywise be called in question in any action or proceeding except one brought directly for that purpose within the time limited, and except in a case wherein such order, ordinance, or proceeding shall have been vacated by a court of competent jurisdiction."

This court had decided in 1882, in *Smith v. Sherry*, 54 Wis. 114, that the validity of taxes levied by a town could be impeached by showing that the town which undertook to levy and assess the same was not duly organized as required by law; and that when the county board of supervisors attempted to change the boundaries of towns, or to erect new towns, a failure to proceed in the manner prescribed by law in making the order, or in failing to publish the same, rendered the organization of the town void; and that these irregularities in the proceedings might be shown in an action to set aside such taxes, or in an action to test the validity of a tax deed issued upon a sale of land for the nonpayment of such taxes. We think it must be presumed that the act above quoted was passed by the legislature to prevent the inconvenience and hardship which were supposed to result from that decision; but, from whatever motive the legislature passed the act, it is evident it was intended to change the rule of law as laid down by this court in the decision above referred to.

It seems to us too clear for argument that this act precludes the plaintiff in this action from contesting the regularity of the proceedings of the county board of Shawano county in changing the boundaries of the town of Richmond in said county. The evidence shows that, for nearly two years after the making of said ordinance, the officers of the town of Richmond exercised acts of jurisdiction over the territory, and treated such territory as a part of said town, assessed the property in said territory by its town officers, and levied taxes as such officers thereon. For all purposes, therefore, except as to some one proceeding by *certiorari* or otherwise as prescribed by said chapter, within the time fixed thereby, the boundaries of the town of Richmond included the lands in question. The town authorities having recognized the order of the supervisors as valid, and having assumed to act under it, its validity or binding force

cannot be questioned in a collateral proceeding or action, even within two years after the passage of the ordinance. The last clause of the act, it seems to us, is conclusive on that point.

The second objection to the order questions the power of the board to make the order under any circumstances, and it is therefore insisted that its validity may be questioned on that ground in any action and at any time. It may be admitted, for the purposes of this decision, that, if there were no power in the board to make the order under any circumstances, its validity may be questioned by the plaintiff in this action, although brought more than two years after the adoption of the same by the board. We will therefore consider the question whether the board had the power to include this territory in the town of Richmond, which was entirely cut off from the original town by the Menominee reservation.

This court held in *Smith v. Sherry*, 50 Wis. 210, and *C. & N. W. R. Co. v. Oconto*, 50 Wis. 189, that a town must be composed of contiguous territory. The town of Richmond, as bounded by the order of the board of supervisors, is composed of contiguous territory. The question presented and decided in those cases does not arise in this case.

The real question is whether the state has the power to include an Indian reservation, or any part of it, within the boundaries of a town. If the state has such right, then the objection that the town is not composed of contiguous territory is not in this case. If the question of the power to include an Indian reservation within the boundaries of a town depends upon the right of the state to exercise its jurisdiction within such reservation, then this court has decided the question in favor of the right of the state to include it within a town, in the case of *State v. Doxtater*, 47 Wis. 278. The reasons for holding that the state has jurisdiction within the Indian reservations in this state were

fully discussed in that case, and are set forth in the opinion therein, and need not be repeated here. The doctrine of that case is recognized by the supreme court of the United States as being the true doctrine, so far as it asserts the jurisdiction of the state over the territory of the reservation, when such asserted jurisdiction relates to the actions of white men within such reservations. *Langford v. Monteith,* 102 U. S. 145. For the purposes of this case, it is sufficient if the state may exercise its jurisdiction over the territory for any purpose. And as it is clear, under the authority of all the cases, that when not prohibited by treaty, or by the act organizing the state, or by some surrender of such jurisdiction by the state after its organization, the state may exercise its jurisdiction, both civil and criminal, over the acts of its citizens within such reservations, it follows that the state not only may, but it is its duty to, include such territory within the boundaries of its towns and counties, in order to assert and exercise such jurisdiction in an orderly and proper manner.

We must hold, therefore, that the county board of Shawano county had the power to include within the boundaries of the town of Richmond the reservation above mentioned. The objection, therefore, that the territory annexed to the old town of Richmond was not contiguous territory entirely fails; and, for all the purposes of this action, it must be held that the territory composing the town of Langlade at the time the debt or claims in suit were contracted by said town, was in May, 1883, attached to and made a part of the town of Richmond, in the county of Shawano, and the circuit court should have so found.

The whole of the territory composing the former town of Langlade having been attached to and made a part of the town of Richmond in May, 1883, not merely for a temporary purpose, but, so far as appears from the order attaching the same, for a permanent purpose, the former town

of Langlade was completely destroyed, and no longer existed for any purpose. See cases cited below. As we hold with the circuit court that the former town of Langlade was not destroyed by detaching the same from Langlade county and attaching it to Shawano county, and that it was not destroyed so as to extinguish its debts by its neglect to elect town officers in the years 1881, 1882, 1883, and that by its annexation to the town of Richmond in 1883 it was destroyed, the important question, so far as it regards the present town of *Langlade*, is what effect such annexation to the town of Richmond had upon the debts then existing against said town. Were these debts, after the destruction of the former town of Langlade, held in abeyance until such territory should be again organized into a separate town, or, upon such annexation of the territory of the town to the town of Richmond, did such debts become the debts of the town of Richmond? If such debts became the debts of the town of Richmond upon the annexation of the town of Langlade to such town, do such debts, if not paid by the town of Richmond, become again the debts of the new town which was thereafter created out of such annexed territory?

We think the authorities are clear on these questions. When the whole territory of one town is annexed to another existing town, the annexed town is destroyed, and all the debts of the annexed town become the debts of the town to which it is annexed, and all the assets of the annexed town become the assets of such town, unless the act of the legislature or order of the board of supervisors makes some other provision in regard to such debts and assets. See *Thompson v. Abbott*, 61 Mo. 176, 177; *Hughes v. School Dist.* 72 Mo. 643; *Mt. Pleasant v. Beckwith*, 100 U. S. 514, 529; *Adams v. Minneapolis*, 20 Minn. 484; *People ex rel. McKenzie v. Sup'rs Ulster Co.* 94 N. Y. 267; *Knight v. Ashland*, 61 Wis. 242; *Butternut v. O'Malley*, 50 Wis. 333.

After such annexation the territory of the extinguished town is no more charged with the payment of the debts of such town than is the territory of the town to which it is annexed, either at law or in equity; but such debts become absolutely the debts of the town to which the extinguished town is annexed, in its enlarged capacity. The reason given is that the enlarged town is supposed to be benefited by the assets of the annexed town and by the increased value of its taxable property; and these supposed benefits are deemed a sufficient consideration for charging the enlarged town with the debts of the extinguished town.

Whether in the case at bar the town of Richmond received any benefit, by way of assets belonging to said town when it was annexed to the town of Richmond, does not clearly appear from the evidence in this case. It does appear, however, that in 1879 and 1880 large sums for taxes were voted in said town of Langlade, and it may be presumed that they were assessed and levied upon the property of said town; and as there were no officers of said town to receive any of the taxes so levied upon the property of said town after May 15, 1881, it may be presumed that a considerable amount of said taxes remained unpaid when the annexation took place. It also appears that the former treasurer of said town had neglected to account for a considerable sum of money belonging to said town of Langlade. The money so in the hands of such defaulting treasurer would, after the annexation, belong to the town of Richmond. See cases above cited. These considerations are, however, immaterial in determining the legal liability of the town of Richmond for the debts and liabilities for the former town of Langlade.

It is equally well-settled law that when a part of an organized town is detached from such organized town, and annexed to another town, or created into a new town, the old town remains liable for all existing debts against it at the

time such territory is detached, and no such debts become a charge against the town to which such territory is annexed, or against the new town created, unless the act of the legislature or the order of the county board detaching such territory makes some apportionment of the debts of the old town, and charges some part thereof to the town to which such territory is annexed, or to the newly created town. *Crawford Co. v. Iowa Co.* 2 Pin. 368; *Milwaukee v. Milwaukee*, 12 Wis. 93; *Goodhue v. Beloit*, 21 Wis. 636; *Depere v. Bellevue*, 31 Wis. 120, 125; *Hampshire Co. v. Franklin Co.* 16 Mass. 76, 86; *Windham v. Portland*, 4 Mass. 384; *North Yarmouth v. Skillings*, 45 Me. 133; *Veazie v. Howland*, 47 Me. 127; *Morgan v. Beloit City*, 7 Wall. 613. Nor does it appear to us that it can make any difference in the result that the portion of territory detached from such town had been, at some remote period in the past, attached to the town from which it is again detached, and that the debt is a debt formerly contracted by a town which was composed of the territory attached and afterwards detached.

It may be said that in equity such detached portion, having formerly contracted the debt as a separate town, ought to pay the debt when it becomes a town again. But it would be difficult to determine the equities between the new town, created of the same territory, and the old town to which it had been attached, and from which it was again separated. In order to show any equitable consideration against the new town, it would be necessary to show that the town to which it had been attached received no assets from the old town; and, in addition, it would be necessary to show that the town to which it had been attached had not received any benefits from the taxation of the property of the old town while it was so annexed, over and above the necessary expenditures of such town on account of the annexed territory. The intrinsic difficulty of arranging any supposed equities arising out of the fact that

the territory attached, and then after some years detached, incurred the debts claimed against the new town, induces us to hold that the established rule as above stated, viz., that, in the absence of any legislative action on the subject, the town from which territory is detached still remains liable for all debts incurred by such town, or for which it was liable at the time such territory was detached, applies as well to a case of this kind as to the case of debts actually incurred by the town while the territory detached was a part of such town. None of the courts intimate any exception to the general rule founded upon the fact that the detached territory had formerly been a separate town, and had incurred the debt sought to be recovered of the new town recreated by detaching its former territory from the town to which it had been attached, at some time in its past history.

If it had appeared that the attachment of this territory to the town of Richmond, in 1883, had been made for a mere temporary purpose, until the electors of the territory could organize a town government by the election of town officers, and not with any intent of subjecting such territory to the permanent government of the town authorities to which it was attached, a very different question would be presented, and we would be inclined to hold, as we do of the attachment of the territory of this town to the town of Polar under the provisions of ch. 137, Laws of 1885, that such temporary attachment did not render the town to which it was attached liable for any debts which might be chargeable to the town so temporarily attached, and that such attachment would not relieve the town so temporarily attached from the payment of its debts.

We think by the fact that the territory composing the former town of Langlade was legally attached to the town of Richmond in 1883 the old town of Langlade was destroyed for all purposes; that the debts and liabilities of

such old town then became the debts and liabilities of the said town of Richmond; and that they still remain the debts and liabilities of such town, notwithstanding the fact that the territory which formerly composed the town of Langlade was detached from said town of Richmond, and created into a new town of *Langlade*, by ch. 137, Laws of 1885, and that the circuit court erred in not so finding, upon the evidence in this case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to the circuit court to dismiss the plaintiff's action.

The following opinion was filed upon the appeal of the plaintiff:

TAYLOR, J.   This is an appeal from so much of the judgment of the circuit court, in this action, as refuses to give the plaintiff interest upon the amount of the town orders upon which the action is brought, from the date of such orders until the date of the entry of judgment.

As we have held in this same action, on the appeal of the defendant town, that the plaintiff was not entitled to recover any part of the amount due upon such town orders against the respondent, the town of *Langlade*, for the reason stated in the opinion filed in the case upon the defendant's appeal, it follows as a matter of course that the judgment refusing interest to the plaintiff upon such orders is correct.

*By the Court.*— So much of the judgment as is appealed from by the plaintiff is affirmed.