THE STATE EX REL. GRAEF, Respondent, vs. FOREST COUNTY, Appellant.

*October 1 — October 15, 1889.*

*Counties: Division of towns: Constitutional law:* Certiorari.

1. The constitution having authorized the legislature to confer upon the county boards " such powers of a local, legislative, and administrative character' as they shall from time to time prescribe," the fact that a general law has given to such boards the power " to set

off, organize, vacate, and change the boundaries of the towns in their respective counties, subject to the limitations" therein prescribed, does not preclude the legislature from enacting that in a certain county none of the towns shall be divided, vacated, or have the boundaries thereof changed except upon a vote of the electors of the towns to be affected.

2. Such an act does not contravene the constitutional requirement of uniformity in the system of county government, the change of town boundaries or the creation of new towns not being a part of such system within the meaning of the constitution.

3. The division of existing towns and the creation of new towns by direct action of the legislature is not " the enacting of any special or private laws . . . for incorporating any town," within the meaning of subd. 9, sec. 31, art. IV, Const.

4. Under sec. 8, art. VII, Const., and ch. 54, Laws of 1883, the validity of an ordinance of a county board purporting to organize or set off a new town or to change the boundaries of existing towns, may be determined by the circuit court on *certiorari*.

APPEAL from the Circuit Court for *Forest* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record that the county board of supervisors of *Forest* county, at an adjourned meeting thereof, held March 21, 1889, passed and adopted in due form an ordinance altering the boundaries of two towns, and cre_ ating a new town, as stated in the opinion of the court; that June 14, 1889, said *Henry Graef* made an affidavit for a writ of *certiorari*, in the usual form; that thereupon the judge of the circuit court for said *Forest* county allowed such writ in the usual form, and the same was issued by the clerk of said court, under the seal thereof, June 17, 1889, and directed to the county board of supervisors of *Forest* county, and to C. C. De Long, county clerk of said county; that thereupon said county board of supervisors, and said De Long, as such county clerk, made return to said writ, under the seal of said county, of which the following is a copy, to wit:

" The answer or return of the county board of supervisors

of *Forest* county, and C. C. De Long, county clerk of *Forest* county, Wisconsin, to the writ of *certiorari* hereunto annexed, by virtue of and in obedience to the writ of *certiorari* hereto annexed and directed to the county board of supervisors, and C. C. De Long, county clerk, by order of the county board. I, C. C. De Long, county clerk of *Forest* county, do hereby certify and return to the judge of the circuit court of *Forest* county that on the 21st day of March, A. D. 1889, the county board of supervisors passed an ordinance (a true copy of said ordinance, and of all the proceedings of the board in relation thereto, is hereto annexed) creating the town of Cashman, and changing the boundaries of the towns of Gagen and Crandon, and that they caused a plat and record of said town of Cashman, and of the towns affected by said ordinance, to be made (a true copy of which is hereto annexed), specifying the names and boundaries of said towns, and that said plat and record is now on file in my office; that I caused a certified copy of said ordinance to be published in the Forest Republican, March 26, 1889, a newspaper published in *Forest* county; that I distributed copies of such paper to the several town clerks in said county, and also filed a copy of same in my office (a copy of such paper is hereto annexed). And I further certify that there was no petition ever presented to the county board, or filed in my office, asking that the question of the division of the town of Gagen or the town of Crandon, or either of them, or the setting off of said town of Cashman, be submitted to a vote of the people; that there was no certificate or other evidence presented to the county board, or filed in my office, showing that the people ever voted on said questions or either of them; that the only petition in relation to the setting off of the town of Three Lakes, or Cashman, filed in my office, was presented to the board, June 18, 1888 (a true copy of which is attached hereto), and that there was no action taken on

said petition, except a motion to lay it on the table until the annual meeting; and that there was no resolution, ordinance, or other action or proceeding of the county board ever submitted, or purported to submit, to any vote of the electors of said towns of Gagen or Crandon, or either of them, or to any portion of them or of either of them, the question of the division or of the change of said towns or either of them. All of which I do hereby certify and return, as within I am commanded. In testimony whereof I have hereunto set my hand and seal, and affixed the seal of the county board of supervisors, this second day of July, A. D. 1889. C. C. De Long, County Clerk."

{ Board of Supervisors,
  Seal.
  Forest County, Wis. }

July 11, 1889, said matter came on to be heard before said court, and, upon the hearing thereof, the said court made and entered a judgment, in which it was adjudged that said ordinance was null and void, and thereby vacated, annulled, and set the same aside. From that judgment the said county of *Forest* appeals.

For the appellant there were briefs by *Egbert Wyman*, district attorney, and *Pinney & Sanborn*, of counsel, and the cause was argued orally by *S. U. Pinney* and *A. L. Sanborn*.

For the respondent there was a brief by *Levi J. Billings*, attorney, and separate briefs signed by *Geo. G. Greene*, of counsel, and the cause was argued orally by *E. H. Ellis* and *Levi J. Billings*.

CASSODAY, J. *Forest* county was created by ch. 436, Laws of 1885. As thus created, it consisted of two towns therein named respectively Sand Lake and Pelican. By ch. 270, Laws of 1887, the territory of the county was divided into three towns, named therein respectively Pelican, Crandon,

and Gagen.   Sec. 1.   The same section provided, in effect, that none of the said towns should " be divided, vacated, or have the boundaries thereof changed by the board of supervisors of said county, until the question of said division, vacation, or change of boundaries be submitted to a vote of the legal electors of the town or towns to be affected thereby; nor unless a majority of such electors in each town shall vote in favor of such division, vacation, or change of boundaries; and the same shall only be submitted to a vote of the electors at an annual town meeting." The act required such submission upon petition of two fifths of the legal voters of the territory affected.   In disregard of this provision, the *ordinance* of the county board in question was passed and adopted by the supervisors of the county, not at an annual meeting, but at an adjourned meeting thereof, March 21, 1889, without any such petition, submission, or vote.   That ordinance purports, in effect, to set off five townships from the town of Gagen, and to create them into the town of Cashman; to set off four and one-half townships from the town of Crandon, and annex them to, and create them into a part of, the town of Gagen; to set off half a township from Gagen, and annex it to, and create it into a part of, the town of Crandon; and to apportion the indebtedness of Gagen and Crandon between Gagen, Crandon, and Cashman, leaving the town of Pelican unaltered and as before.   On *certiorari*, the trial court held that such action of the board of supervisors, in the adoption of the ordinance, was void, as being without authority of law and in direct conflict with the provision of ch. 270, Laws of 1887, quoted above.

The learned counsel for the appellant, with his usual ability, strenuously contends that such provision of ch. 270, Laws of 1887, is in conflict with the constitution, and therefore void, and hence furnished no limitation upon the powers thus exercised by the county board.   The constitution re-

peatedly recognizes the existence of towns and counties, and hence presupposes their creation and organization. The fact of such previous creation and organization implies the previous existence of a local government in each. Such local government manifestly included the ordinary affairs and business of such organizations, respectively, and nothing more. The framers of the constitution must have foreseen that from time to time, as the state became older and communities more thickly populated, public convenience might require, or the popular will demand, a change, not only in the system of town and county government, but in the boundaries of counties and towns, and also the creation and organization of new counties and new towns. These things necessarily required an exercise of the legislative functions of the government. The constitution vests " the legislative power " of the state "in a senate and assembly." Sec. 1, art. IV. Under this general grant or designation of power, the state legislature was and is authorized to exercise any and all legislative powers not delegated to the general government, nor expressly or by necessary implication prohibited by the national or state constitution. Subject to such limitations, the authority of the state legislature over towns and counties — in enlarging or diminishing their powers, in extending or restricting their boundaries, in dividing or consolidating them — seems to be plenary. *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 621; *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 86; *Laramie Co. v. Albany Co.* 92 U. S. 308.

While it may be said, in a general way, that our state constitution is not a grant, but a limitation, of powers, nevertheless it is true that the general powers vested in each of the three departments of the state government are, in certain particulars, enlarged and extended by specific grants of power, as well as being specifically limited and restricted in certain other particulars. This is certainly

true respecting the powers vested in the legislative department, which is the one here under consideration. Thus the framers of the constitution foresaw that it would not always be convenient or practicable for the legislature to directly exercise all "the powers of a local, legislative, and administrative character," pertaining to "the several counties of the state;" and hence the constitution expressly provides that "the legislature *may confer* upon the boards of supervisors of the several counties of the state *such* powers of a local, legislative, and administrative character *as they shall from time to time prescribe."* Sec. 22, art. IV. Under this express authority the legislature early delegated to the county boards of the several counties in the state certain prescribed general powers. Sec. 669, R. S. In addition to the general powers and duties of the several county boards, enumerated in that section, the legislature also conferred upon them certain prescribed "special powers;" "subject," however, "to such modifications and restrictions" as the legislature should "from time to time prescribe." Secs. 670, 671, R. S. The "special powers" therein enumerated included the power "to set off, organize, vacate and change the boundaries of the towns in their respective counties, subject to the limitations" therein prescribed.

"Of course, the legislature enacting that statute could not thereby take away nor abridge the powers of subsequent legislatures to legislate upon the same subject." *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 622. In fact they did not attempt to do so. The contention is, that while the legislature were expressly authorized to confer such special powers upon *every* county in the state by general statutes, yet they were powerless, in the matter of such delegation of authority, to discriminate between counties by withholding from one, or more, special powers which were thus conferred upon the others. But the section of the constitution under consideration contains no such re-

striction. The language is expressly permissive: "The legislature *may* confer . . . *such* powers" as are therein designated " as they shall *from time to time* prescribe." The matter of delegating or withholding such powers is left, by that section, to the wisdom of the legislature. "This authority for conferring such powers upon county boards contains within itself an express reservation of the same powers to be exercised from time to time in prescribing other and different laws." *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 622. Hence it was held in that case that, notwithstanding such "special powers" conferred upon the several counties of the state by such general statutes, yet it was competent for the legislature, by direct action, to divide a county into towns and to provide for their organization. So it has been held that the legislature may, by such direct action, divide an existing town and create out of it new towns, in a county previously organized. *Cathcart v. Comstock*, 56 Wis. 590; *Yorty v. Paine*, 62 Wis. 154. This is upon the theory that the power of the legislature in such matters being plenary, subject to the limitations mentioned, it is for them to determine whether they will, in a given case, exercise such power directly, or leave the county board to exercise the same under the general delegation of powers mentioned. In other words, the legislature are, so far as the section of the constitution quoted is concerned, left free to resume, at pleasure, any or all of such special powers previously conferred upon the boards of supervisors of the several counties by general statutes, as they may from time to time prescribe. Since the legislature may, in their wisdom, assume the exclusive power of changing the boundaries of existing towns, and create new towns, in any county already organized, it logically follows that they may resume such power *in part* by limiting the authority conferred upon the county board in such matters, and requiring a submission to, and a majority

vote of, the electors of the town or towns to be thereby affected, unless restricted by some other provision of the constitution.

It is claimed that ch. 270, Laws of 1887, is in violation of that section of the constitution which prohibits the legislature from establishing more than "one system of town and county government," which is required to "be as nearly uniform as practicable." Sec. 23, art. IV. But this court has already held that the changing of the boundaries of existing towns and creating new towns by the direct action of the legislature was not in contravention of such uniformity of such system of town and county government. *Cathcart v. Comstock,* 56 Wis. 603, 613; *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 622, 623. The reasons for such holding are sufficiently given in those cases, and need not be here repeated. As there indicated, such change of boundaries, and such creation of new towns, is no part of the system of county government, within the meaning of this constitutional provision, notwithstanding the special powers conferred upon the boards of supervisors of the several counties by statute. The precise point is that such change of boundaries, and such creation of new towns, is not an exercise of the governmental powers of such county, within the meaning of this constitutional provision. On the contrary, it is the exercise of such legislative power as no county has any authority to exercise merely by virtue of its existence as a county, but only when and so far as specially conferred by the legislature. This distinction between the ordinary governmental powers which are necessarily embraced in the one system of county government, and such special powers as are conferred for convenience because they could not otherwise be exercised by the county, has often been recognized by this court, not only in the cases cited, but in numerous others which might be cited.

We must therefore hold that the section of the constitution last cited constituted no bar to the enactment of the clause of ch. 270, Laws of 1887, quoted above.

So it has been held in the cases cited that the division of existing towns and the creation of new towns by direct action of the legislature, is not the "enacting of any special or private laws . . . (9) for incorporating any town," within the meaning of sec. 31 of the amendment to article IV of the constitution.

It follows, from what has been said, that the enactment of the provisions of ch. 270, Laws of 1887, in question, was and is a valid exercise of legislative power.

It is claimed by counsel that the action of. the county board in dividing towns and creating a new one was not an exercise of any power judicial in its nature, but purely legislative, and hence is not reviewable on *certiorari*. Had the action of the board of supervisors complained of been within the scope of the powers conferred upon them, and not in direct violation of a valid statute, there might possibly have been force in this objection. But, as we have seen, it was in direct violation of the statute. The constitution gives to circuit courts the power to issue writs of *certiorari* to "inferior courts and *jurisdictions*." Sec. 8, art. VII; *State ex rel. Vaughn v. Ashland*, 71 Wis. 506. The statute expressly provides that the validity of any ordinance purporting to organize or set off any new town or to change the boundaries of any existing town or towns, may be tested by *certiorari*, brought directly for the purpose of vacating such ordinance, in a court of competent jurisdiction. Ch. 54, Laws of 1883. This statute has been repeatedly recognized as an existing law by this court. *Sherry v. Gilmore*, 58 Wis. 332; *Schriber v. Langlade*, 66 Wis. 625. It has also been so recognized by the United States court for this district. *Austrian v. Guy*, 21 Fed. Rep. 508. We must hold

that the trial court had authority to determine the validity of the ordinance on *certiorari*.

*By the Court.*— The judgment of the circuit court is affirmed.