JOHNSON, Respondent, vs. BUFFALO COUNTY, Appellant.

*September 3 — September 24, 1901.*

*Counties: Bridges: Aid to town: Contracts: Power of commissioners.*

Under sec. 1319, Stats. 1898 (providing that in certain cases, upon petition of the town board, the county board shall appropriate one half of the cost of the construction of a bridge and shall designate two of its members as its commissioners to co-operate with the town board, and that such board and said commissioners shall have full charge and authority to act in the letting, inspection, and acceptance of the work), neither the commissioners alone nor the commissioners and the town board together have any authority to bind the county by a contract for the construction of a bridge.

APPEAL from a judgment of the circuit court for Buffalo county: E. W. HELMS, Circuit Judge. *Reversed.*

For the appellant there was a brief by *M. L. Fugina* and *Webber & Lees,* and oral argument by *Mr. Fugina* and *Mr. Edward Lees.*

For the respondent there was a brief by *C. W. Gilman* and *Charles J. Traxler,* and oral argument by *Mr. Traxler.*

CASSODAY, C. J. Some time prior to December 2, 1898, the town board of the town of Modena filed its petition with the county board of the defendant county for aid in the construction of the bridge therein described within that town, as prescribed in sec. 1319, Stats. 1898. Thereupon the county board designated two of its members to co-operate with the town board, as prescribed in that section. On December 2, 1898, an agreement in writing was made, or purported to be made, by and between the plaintiff as party of the first part and "the town of Modena and the county of *Buffalo,* by their joint committee," as party of the second part, wherein the plaintiff "agreed to furnish all material, and to construct and complete, ready for travel," the bridge described, on or before April 1, 1899, in consideration of which

the party of the second part therein in form agreed to pay
to the plaintiff $845 on the completion of the structure. That
agreement was signed by the plaintiff and the town board,
and also by the commissioners so appointed by the county
board. On March 21, 1899, such commissioners of the county
board made and filed with the county clerk their report in
writing that such bridge had been built and completed ac-
cording to the contract, and to their entire satisfaction, and
that $422.50 — being one half of the contract price — was
then due to the plaintiff from the county, and recommended
its payment. The town paid the plaintiff one half of such
contract price as its share thereof.

On or about March 28, 1899, the county treasurer, on the
order of the chairman of the county board and the county
clerk, bought a draft from the Exchange Bank of Alma,
Wisconsin, on the Batavian Bank of La Crosse, for $422.50,
and sent the same by mail to the plaintiff, at Minneapolis,
where he resided. The plaintiff testified to the effect that
he was at different places in South Dakota on April 2, 1898,
and until April 6, 1898, and that he did not receive the draft
until April 8, 1898, although his letter written on that day
to the county treasurer states that he received it some days
before. On that day the plaintiff deposited the draft to his
credit in a Minneapolis bank, and that bank sent it to a Mil-
waukee bank for collection, and it was finally presented to
the La Crosse bank for payment April 11, 1899, when pay-
ment was refused for want of sufficient funds to the credit
of the Alma bank; and it is undisputed that the La Crosse
bank did not have sufficient funds to the credit of the Alma
bank to pay such draft at any time from March 28, 1899, to
April 11, 1899, inclusive, except from March 31, 1899, to
April 6, 1899, inclusive.

The plaintiff, having failed to realize on the draft, pre-
sented his verified claim for the amount thereof, with inter-
est, to the county board, November 14, 1899, claiming the

the same as "due on joint contract between" himself "and *Buffalo County* and the town of Modena." The county board wholly disallowed such claim, and thereupon, and on January 8, 1900, the plaintiff appealed from such disallowance to the circuit court. The defendant answered to the effect that the draft so sent was received by the plaintiff and accepted by him in full payment of said account, but otherwise denied each and every allegation of the complaint.

A trial being had, the jury returned a special verdict to the effect that the plaintiff first received the draft April 3, 1899. Thereupon the plaintiff moved upon the minutes of the court to set aside the verdict, and for a new trial, and also for judgment in his favor upon such verdict and the records and evidence in the case. At the same time the defendant moved the court for judgment in its favor upon the special verdict so rendered. Subsequently the court denied the defendant's motion, and ordered judgment in favor of the plaintiff upon his motion therefor, which was accordingly entered. From that judgment the defendant brings this appeal.

While it is conceded that the commissioners were properly appointed by the county board to co-operate with the town board, as prescribed in sec. 1319, Stats. 1898, and that the plaintiff had completed the bridge according to such agreement in writing, and that the town had paid one half of the contract price, yet it is contended that such agreement in writing was not binding upon the county for want of authority in the commissioners to make the same. The statute provides that "the supervisors of the several towns shall have the care and supervision of all highways and bridges therein, except as is otherwise provided by law." Sec. 1223. The chapter in which that section is found prescribes the duties of town supervisors in respect to highways and bridges. Ch. 52. So the supervisors of any town are by statute authorized to levy a tax, not exceeding a sum mentioned,

for the building of bridges. Sec. 1318. The statutes also prescribe the manner of obtaining aid from the county for the making and repairing of highways and the making of permanent improvements thereon. Secs. 1299g, 1304a–1309, 1319. This last section provides that "whenever any town board shall file its petition with the proper county board [as in the case at bar] the said county board shall appropriate the other half of such cost and cause such sum to be levied upon the taxable property of the county as will, with the amount provided by said town, be sufficient to defray the expense of erecting or repairing each bridge so petitioned for, and such money, when collected, shall be paid out on the order of the chairman of the county board and county clerk whenever the said town shall notify them that the work has been completed and accepted." Sec. 1319, Stats. 1898.

If the county is liable at all in this action, it is by virtue of the provision of the statute just quoted. That provision certainly does not purport to give a right of action in favor of the party constructing the bridge against the county. It simply imposes upon the county board the duty of appropriating the "other half of such cost," and to "cause such sum to be levied upon the taxable property of the county," and to collect the same, and to pay it out as prescribed, when notified by the town "that the work has been completed and accepted." Such aid of the county can only be invoked by the petition of the town board, and the response of the county is to be made to the town board. Certainly, the two commissioners designated by the county board are not expressly authorized to contract with such bridge builder in the name of the county, much less in the name of the county and town jointly, which would be an attempt to bind the county to pay the whole contract price. True, the section relied upon requires the commissioners to "co-operate" with the town board, and provides that such

board and commissioners "shall have full charge and authority to act in the letting, inspecting, and acceptance of the work." The county does not deny the authority of the commissioners to co-operate with the town board in letting the work, nor the authority of the board and commissioners to inspect and accept the work when completed. In other words, the county does not deny that it is in duty bound to aid the town, in the manner prescribed, to the extent of one half of the cost of the bridge; but it insists that neither the commissioners nor the commissioners and the town board together had any authority to make a binding contract between it and the bridge builder, like the one in question. It insists, moreover, that it could only be bound to make an appropriation, and levy and collect the tax as prescribed, and, when collected, pay over the amount on the requirement of the town whenever the work should be completed and accepted by the commissioners and the town board. "The powers of a county as a body corporate can only be exercised by the county board thereof, or in pursuance of a resolution or ordinance by them adopted." Sec. 652, Stats. 1898. Here the county is authorized to aid the town in the manner prescribed, and in no other manner. We must hold that the defendant is not liable to the plaintiff on the contract of December 2, 1898.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to grant the motion of the defendant and enter judgment in favor of the defendant and against the plaintiff dismissing the action, and for further proceedings according to law.