THE STATE EX REL. McCOALE and others, Respondent, vs. KERSTEN and others, Appellants.

*May 13—May 29, 1903.*

*Municipal corporations: Charter provisions: Conflicting statutes: Revision: County board: Membership: Constitutional law: Uniformity of county government: Certificate of election: Presumptions: Public officers: Mandamus.*

1. The charter of the city of Chilton, as amended by sec. 6, ch. 49, Laws of 1878, provides that "the elective officers of said city shall be a mayor, who, by virtue of his office, shall be supervisor of said city, and as such shall be the sole representative

State ex rel. McCoale v. Kersten, 118 Wis. 287.

of and for said city in the county board of supervisors." Sec. 19, subch. XI, of said charter (ch. 89, Laws of 1877), provides that "no general law of this state contravening the provisions of this act shall be considered as repealing, amending, or modifying the same, unless such purpose shall be expressly set forth in such law as an amendment to this chapter or this act." Secs. 662, 663, Stats. 1898, provide that every ward of a city shall be represented in the county board by one supervisor, elected annually by the electors of said ward, and sec. 4986 provides that all laws contained in the statutes shall be in force in cities, so far as applicable and not inconsistent with their charters, "but when the provisions of any such charters are at variance with these revised statutes, the provisions of such charter shall prevail, unless a different intention be plainly manifested." *Held*, that the special provision of such charter relating to representation on the county board was in force as enacted by special act of the legislature, and was not intended to be repealed by the general revision of the subject in the Statutes of 1898.

2. Such charter provision, making the mayor, as such, sole representative of the city of Chilton in the county board of Calumet county, when secs. 662, 663, Stats. 1898, provide for a representative from each city ward, does not violate sec. 23, art. IV, Const., requiring town and county government to be as nearly uniform as possible.

3. When the election of an official was duly certified by the proper officer, it must be presumed that a proper canvass of the vote had been had before such certificate issued, and that the canvassing officers determined that such official was duly elected.

4. In such case, until steps are taken to review such determination, the person holding the certificate of election to office must be held entitled thereto as against any intruder, or against all the world except a *de facto* officer, in possession of the office under color of authority.

5. Where persons claim to be elected to an office, and they hold certificates of their election and qualification from the proper officers, *mandamus* is the proper remedy to obtain possession of the office.

APPEAL from an order of the circuit court for Calumet county: JAMES J. DICK, Judge. *Reversed.*

This is an appeal from an order refusing to quash the proceedings for writ of *mandamus*. This proceeding was insti-

tuted by relators, who respectively claim to be the duly elected supervisors from the three wards of the city of Chilton, at the election held in that city April 2, 1901. Their election to office, and that they qualified as supervisors for their respective wards, was certified to the county clerk of Calumet county by the clerk of the city on April 3, 1901, and filed in the office of the county clerk on April 5, 1901. The relators severally appeared at the opening session of the county board of supervisors of Calumet county on November 12, 1901, and demanded, and assumed to exercise, the right to participate in the proceedings of said county board of supervisors as supervisors of their respective wards. The board of supervisors by resolution refused to allow relators to participate in the proceedings, and declared the mayor of the city of Chilton, under the city charter, to be the sole representative in the county board of supervisors. Relators seek in this proceeding to command said board to admit them to membership in the board of supervisors, and permit them to participate in the proceedings thereof.

For the appellants there were separate briefs by *James Kirwan* and *P. H. Martin,* and oral argument by *Mr. Martin.*

*J. E. McMullen,* for the respondent.

SIEBECKER, J. It is contended on the part of relators that they were the lawfully elected supervisors of their respective wards of the city of Chilton under the general law providing for the representation of every ward in every city in the state upon the county board of supervisors. See secs. 662, 663, Stats. 1898. This presents the question of the validity of the provisions of the act incorporating the city of Chilton, and the acts amending the same, by the terms of which the mayor of said city is declared to be the sole representative for the city in the board of supervisors of Calumet county.

The charter of the city, as amended by sec. 6, ch. 49, Laws of 1878, provides:

"The elective officers of said city shall be a mayor, who, by virtue of his office, shall be supervisor of said city, and as such shall be the sole representative of and for said city in the county board of supervisors of said county of Calumet. . . ."

Sec. 19, subch. XI, of the charter (ch. 89, Laws of 1877), is as follows:

"No general law of this state contravening the provisions of this act shall be considered as repealing, annulling or modifying the same, unless such purpose be expressly set forth in such law as an amendment to this chapter or this. act."

The right of the legislature to prescribe how the city of Chilton shall be represented in the county board of supervisors, under the constitutional power to incorporate cities as municipal corporations and designate what officers shall be elected or appointed for the administration of its affairs, was not questioned upon the argument, except that the exercise of such power shall be in conformity to sec. 23, art. IV, Const., providing that but one system of town and county government, as nearly uniform as practicable, can be established. No legislation has been enacted which expressly repeals these provisions of this charter, unless secs. 662 and 663, R. S. 1878—preserved in the Statutes of 1898—operate as a repeal thereof. These sections provide:

"Every ward or part of ward of any city . . . shall be represented in the county board, in which any such ward or part thereof, or city or village, or part thereof, is situated, by one supervisor; all such supervisors shall be elected annually by the electors of such ward, or parts of wards." And further: "The county board of supervisors shall consist of the chairmen of the several towns and the supervisors of each ward, and part of a ward of every city, and of each incorporated village or part thereof."

The general scope of these provisions covers all cities and villages of the state, yet the statutes expressly except from their application cities whose charters are in conflict therewith. Sec. 4986 specifically declares all laws contained in the statutes shall be in force in cities, so far as applicable and not inconsistent with their charters, and specifically declares:

"But when the provisions of any such charters are at variance with these revised statutes, the provisions of such charter shall prevail unless a different intention be plainly manifested."

The statute last quoted was plainly designed to repel any presumption that the general statutory provisions were intended to repeal special provisions relating to certain municipal corporations or the officers thereof, unless specifically designated, and provides that none of the general provisions of the statutes shall be so construed as to affect or repeal the provisions of any special acts relating to particular municipal corporations or the offices or officers thereof.

These express declarations on the part of the legislature show plainly that special legislative acts, such as municipal charters, are not intended to be repealed, directly or by implication, by a general revision of the subject in such statutes, where the specific subject is otherwise covered by such charters. The charter must be held to be in force as enacted by special act of the legislature.

It becomes necessary, therefore, to determine whether the provisions of the charter making the mayor, as such, the sole representative of the city of Chilton in the board of supervisors of the county of Calumet, violate sec. 23, art. IV, Const. This section declares:

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

The charter provision cannot be said to violate the unity of the plan of county government contemplated by this provision of the Constitution. The board of supervisors, as constituted in Calumet county, exercises the same powers, and in the same manner, as like boards throughout the state. The system of county government in all respects is the same in this as in every other county. Does the special charter act violate the uniformity of the system of county government by declaring that the mayor, by virtue of his office, shall be the supervisor, and as such the sole representative of and for said city in the county board of supervisors for said county? The general system of county government is a representative system, where some one is chosen as a representative from some prescribed district or territory, embracing the whole or a part of a municipal corporation as a political subdivision of the county, without regard to absolute equality of number in population, or sameness of area, or designation of such municipal subdivision. Absolute uniformity is not demanded, but uniformity as nearly as practicable is required. The legislature determined that uniformity of representation in this county board as constituted would be attained, within the scope and intent of this constitutional provision, by having the city of Chilton represented by its mayor alone. And, when the qualified voters of the city elect him to the office of mayor, they thereby exercise their right to select their representative in the county board of supervisors.

We are unable to say that the principle of unity and uniformity of the system of county government prescribed has thereby been interfered with. *State ex rel. Peck v. Riordan,* 24 Wis. 484; *State ex rel. Grundt v. Abert,* 32 Wis. 403; *State ex rel. Atty. Gen. v. Cunningham,* 81 Wis. 440, 51 N. W. 724.

It is contended relators have mistaken their remedy, and that *mandamus* is not an appropriate remedy to enforce their rights. It appears that relators' election as supervisors for

their respective wards was duly certified to the county clerk by the proper city officer. It must be presumed that a proper canvass of the vote was had before such certificate issued, and that the canvassing officers determined that relators were duly elected. While such determination may be subject to inquiry and revision, yet, until such steps are taken, the person holding the certificate of election to office must be held entitled thereto as against any intruder, or against "all the world except a *de facto* officer in possession of the office under color of authority." *State ex rel. Jones v. Oates,* 86 Wis. 634, 57 N. W. 296; *State ex rel. Gill v. Milwaukee Co.* 21 Wis. 443. If each ward of the city of Chilton had been entitled to representation in the county board of supervisors, then it was the right of relators to be admitted to the office under their *prima facie* title, and maintain possession thereof until some other person in a proper proceeding at law should deprive them of that right; and *mandamus* is the proper remedy to obtain possession of the office. *State ex rel. Jones v. Oates, supra,* and cases cited. No necessity arises to determine whether *quo warranto* proceedings might not be instituted to contest relators' *prima facie* title to the office in question had their election been valid under the charter of the said city of Chilton.

Upon the conclusions as herein expressed, the proceedings on the part of the relators to obtain possession of the offices must be dismissed. The order refusing to quash the proceedings for writ of *mandamus* must be reversed. This result renders unnecessary any consideration of other questions presented by counsel in their briefs.

*By the Court.*—The order of the circuit court is reversed, with directions to quash the writ.