State ex rel. Busacker v. Groth, 132 Wis. 283.

STATE EX REL. BUSACKER, Appellant, vs. GROTH and others, Respondents.

*February 22—June 20, 1907.*

*Constitutional law: Uniformity in system of county government: Trustees to manage county institutions: Relief and support of poor, etc.*

1. Only when the unconstitutional purpose is clear beyond a reasonable doubt will a court be justified in declaring void an act of the legislature.

2. Although sec. 23, art. IV, Const., provides that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable," a general law applicable to a class of counties may provide for reasonable departures from uniformity in county government in cases where it is not practicable to carry on such government in that particular class of counties in the same manner in which it is carried on in other counties outside of that class.

3. Thus, a general law applicable to all counties in a certain class, such as counties containing a certain population, may provide for additional officers therein and authorize them to perform certain administrative duties which under the general system are imposed upon the county boards, if the functions and duties of such additional officers are under the control of the county board and, resolving all reasonable doubts in favor of the validity of the act, the court is not satisfied that the general system was practicable in the particular instance.

4. Ch. 94, Laws of 1905 (secs. 697—45-49, Stats.: Supp. 1906)—providing that in all counties having, now or hereafter, a certain population the county board shall elect five trustees, removable from office by the county board; that such trustees shall have the same power in all matters relating to the care and support of the poor as is now vested in the county board, and shall have the entire management of the county hospital, county farm, almshouse and waterworks, and the department of outdoor relief, and the entire management of the support and relief of the poor in such county; that they shall let all contracts and make all purchases necessary to maintain and improve said institutions and maintain and support the poor therein, and shall audit all accounts therefor; that they shall have power to appoint three superintendents of the poor and fix their salaries, and to make all necessary rules and regulations for said institutions; that they shall file an annual report of receipts and disbursements and an estimate of appropriations needed for the ensuing year, to be laid before the county board; and that the county board shall make sufficient appropriation annually in advance for the maintenance of said institutions, to be used subject to the order of the said trustees, etc.—is *held* not to conflict with secs. 669, 670, Stats. (1898), relating to powers of the county board generally, and not to be invalid under sec. 23, art. IV, Const. CASSODAY, C. J., and WINSLOW and DODGE, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

*Quo warranto.* The appeal is from a judgment dismissing the complaint after order sustaining a demurrer thereto, and time to plead over had expired. The respondents, *John A. F. Groth, Louis Manegold, Timothy Driscoll, August F. Zentner,* and *W. E. Chase,* were elected by the county board of supervisors of Milwaukee county trustees under ch. 94, Laws of 1905 (secs. 697—45-49, Stats.: Supp. 1906), and were holding and exercising such office under said appointment. The relator is a member of said county board, a citizen, taxpayer, and freeholder. Milwaukee county had adopted the county system of support of the poor, and for such purpose a county hospital, a county poor farm, and almshouse, waterworks, and a department of outdoor relief

had been established. It is contended that ch. 94, Laws of 1905, is unconstitutional and void because in conflict with sec. 23, art. IV, Const. The provisions of that law will be found stated in the opinion.

For the appellant there was a brief by *Lyman G. Wheeler* and *Charles B. Perry*, and oral argument by *Mr. Wheeler*.

For the respondents there was a brief by *Churchill, Bennett & Churchill* and *John A. F. Groth*, and oral argument by *W. H. Bennett* and *W. H. Churchill*.

TIMLIN, J. "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." Sec. 23, art. IV, Const. This section of the constitution has been many times before the court, more frequently with reference to counties than to towns, although it refers to each in the same terms. At and prior to the time of the adoption of the constitution there existed considerable diversity in town and county government in the territory of Wisconsin. In some counties there were three county commissioners elected at large, and in some a board of supervisors consisting of the chairmen of the town boards of the constituent towns. By the revised statutes of the territory (Terr. Stats. 1839, pp. 103, 104, §§ 1–9) there appears to have been a uniform system of county government vested in a board of three county commissioners whose general powers were provided for by sec. 13, p. 105. Soon after this the territorial assembly began to organize town governments by special acts and also to organize new counties, some of which were governed by a board of county commissioners and some by supervisors. Towns were organized, but the local governments thereof were not uniform. So that on the whole there was considerable diversity in town and county government. R. S. 1849, ch. 10, sec. 25, provided that the county board of supervisors should consist of the chairmen of the boards of supervisors of the several towns

and the supervisors in any city in the county who were authorized to sit in the county board; sec. 7, Id. that the powers of a county as a body politic and corporate could only be exercised by the board of supervisors thereof; and sec. 27, Id. prescribed the general powers of the county board in outline similar to the present statute. Sec. 28, Id. conferred certain special powers upon them, subject to such modifications and restrictions as the legislature should from time to time prescribe. Subd. 6 of sec. 27 provided among the general powers of the county board that such board should have power "to represent the county and to have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision shall be made." This continued in force down to the present time. Subd. 6, sec. 669, Stats. (1898). The earlier decisions of this court construing sec. 23, art. IV, Const., seem to place considerable stress on this section as a prohibition against the enactment of special laws for a particular town or county. *State ex rel. Peck v. Riordan,* 24 Wis. 484, 492 (1869); *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339 (1870). In the case last cited it is said:

"In this they must have aimed at the evil of special legislation. That this is a great and serious evil every one at all familiar with legislative experience knows. The members are constantly annoyed by persons among their constituents who are anxious to amend the laws regulating their local concerns. The local member naturally yields to the local pressure, whether in harmony with his own views or not; and the legislature, usually without much consideration, enacts such local measures as the local members may ask. And thus the public time and money are spent in enacting laws that are frequently of an unwise and improvident character. It is an evil that there have been many efforts to check; and I can conceive of no other motive for the clause in the constitution requiring the system of county and town government to be as uniform as practicable except to prevent such special legislation, varying the system in different localities, as might not amount to an actual destruction of its unity."

Somewhat similar views are expressed in *State ex rel. Peck v. Riordan, supra,* which was the first case that arose calling for the construction of this constitutional provision. If we look at the volume of Private and Local Laws each year, swelling from 396 pages in 1861 to 1,469 pages in 1868, and glance through the pages of the latter, we will find much to confirm the statement of the learned justice that special legislation at that time had grown to be a great and serious evil. Of the first hundred acts of the legislature recorded in the Private and Local Laws for 1868, forty are special acts relating to the local government of towns and counties, and a cursory examination of the remainder of the volume would indicate that about that proportion held good throughout. In 1871 an amendment to the constitution was consummated by which it was provided:

"Section 31. The legislature is prohibited from enacting any special or private laws in the following cases: 1st. For changing the name of persons or constituting one person the heir at law of another. 2d. For laying out, opening, or altering highways, except in cases of state roads extending into more than one county, and military roads to aid in the construction of which lands may be granted by congress. 3d. For authorizing persons to keep ferries across streams at points wholly within this state. 4th. For authorizing the sale or mortgage of real or personal property of minors or others under disability. 5th. For locating or changing any county seat. 6th. For assessment or collection of taxes or for extending the time for the collection thereof. 7th. For granting corporate powers or privileges, except to cities. 8th. For authorizing the apportionment of any part of the school fund. 9th. For incorporating any town or village or to amend the charter thereof.

"Section 32. The legislature shall provide general laws for the transaction of any business that may be prohibited by section thirty-one of this article, and all such laws shall be uniform in their operation throughout the state."

These sections are now a part of art. IV of the constitution, except that sec. 31 has been since amended so as to pro-

hibit special or private laws for incorporating any city as well as for towns or villages.

It may be useful to classify the cases that have arisen under sec. 23, art. IV, with reference to the subject of litigation, rather than to arrange them chronologically, or merely classify them into those which hold certain legislative acts valid and those which hold other legislative acts invalid.

First. *With reference to the number of supervisors in counties.* Where a special law provided for a county board of eight supervisors in a certain county which under the general statute relating to county government would have but three, there is a conflict with the section of the constitution in question and the special act is void. It is said that uniformity was here attainable, the diversity unnecessary, and that the act was special. *State ex rel. Peck v. Riordan,* 24 Wis. 484. Notice that this same opinion treats as valid a general law regulating the number of supervisors not uniform in its operation, but only uniform with respect to a class created by other laws making assembly districts. Where a general law provided that in counties containing only one town the board of supervisors of that town should constitute the county board, while in all other counties the county board consisted of the chairmen of the several town boards of supervisors, the law was held valid. *Cathcart v. Comstock,* 56 Wis. 590, 14 N. W. 833. Where the general law provided for the election of one member of the county board of supervisors from each ward and part of a ward of every city, and the city of Chilton, in Calumet county, had three wards, but the charter of that city provided that the mayor of the city should be the sole representative of the city in the county board of supervisors, thus giving the county two less supervisors than other like counties electing under the general statutes, the charter provision was held valid upon the ground that absolute uniformity is not demanded, but only uniformity as nearly as practicable, and that the legislature deter-

mined that such uniformity of representation in this county board as so constituted would thus be secured within the scope and intent of this constitutional provision. Nothing is said as to whether the charter provision was or was not considered a special act of the legislature. *State ex rel. McCoale v. Kersten,* 118 Wis. 287, 95 N. W. 120 (1903).

Second. *Additional officers authorized to perform part of the duties which the general statutes impose upon the county board.* Where a special act appointed three commissioners to superintend the erection of a courthouse in the county of Milwaukee and the general law conferred powers on all county boards to build and keep in repair county buildings, the special act was held invalid because contravening this provision of the constitution, because a special law, and because uniformity in this respect was considered by the court to be practicable. On this last point the court said:

"But the constitution requires the system to be only as uniform as practicable. And this, it is said, does not require absolute uniformity, nor that the same state of things should exist in all the counties. This is very obvious. A uniformity that is impracticable is not required; but, as already shown, *that here in question is practicable.* And the different boards of different counties may, in the exercise of their general powers of county government, produce very different results. But all that does not touch the unity or uniformity of the system. . . . Because some departures from absolute uniformity may be sustained under this clause, it will not do to say that, therefore, all departures can be, and that the provision itself is capable of no practical enforcement. Its language is positive and imperative, in no wise like that of provisions designed to refer questions wholly to the judgment and discretion of the legislature. When a case arises under it, where the question, whether a greater uniformity were practicable or not, is doubtful, as in all other such cases, the law would receive the benefit of the doubt." *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339 (1870).

A special act providing for the office of county auditor whose disallowance of a claim against the county should be

final, unless thereafter allowed by two thirds of the members-elect of the board, was held void.  *State ex rel. Walsh v. Dousman,* 28 Wis. 541.

Where a special law (ch. 509, P. & L. Laws of 1868) provided for the election of a superintendent of the poor by the electors of the county at the general election; gave the person so elected power to appoint an assistant or bookkeeper, a superintendent of the county farm and poorhouse, a keeper of the hospital, and such other assistants as might be required subject to the order and approval of the board of supervisors; provided an annual salary; required the superintendent to give bond to be approved by the county judge and chairman of the county board of supervisors; provided that he should have the general superintendence of the poor in said county under the supervision of the board of supervisors; that he might make by-laws and adopt rules and regulations for the support and maintenance of the poor in his county, not inconsistent with the laws of the state and such as should be approved by the supervisors; required him to make report under oath to the board of supervisors, giving a detailed statement of the condition of the affairs of his office together with the receipts and disbursements of the same; and made him subject to removal by the board of supervisors for failure to make this report or for official misconduct or wilful neglect of duty,—the law was held valid.  *State ex rel. Grundt v. Abert,* 32 Wis. 403.   The general law at this time authorized county boards to elect by ballot three superintendents of the poor, who should constitute a corporation of a given name and possess the usual powers of a corporation for public purposes, who would be capable of purchasing and holding real estate for the benefit of the county with power to convey the same when directed by the county board.   These superintendents had the general charge of the poor in their county, had power to make by-laws and regulations to be approved by the county board, and were at all times subject to the control and

direction of that board in all things pertaining to the care and support of the poor. They were subject to removal at the pleasure of the board, were required to give bond, and the county board was authorized to audit their accounts. No member of the board was eligible to the office, and the superintendents had the same power as town supervisors with reference to cases of bastardy. 1 Tay. Stats. pp. 723, 727, 742, 743. In the case of *State ex rel. Grundt v. Abert, supra,* at page 405, the court said:

"We cannot say, as a legal proposition, that the situation of Milwaukee county in relation to the support of its paupers was not such that it was impracticable to intrust that business to three superintendents. And, could we say this, it is not easy to perceive how the uniformity of the general system could be materially disturbed by such change. The only provision in the law of 1868, which at first view might seem to be an innovation upon the general system, is that which deprives the board of supervisors of the power to appoint the superintendent. But, inasmuch as the power of such board over the pauper affairs of the county, and over the superintendent and his assistants, is as ample and complete as it would be under the general law, we are of the opinion (and so hold) that the change in the mode of choosing the superintendent does not affect the uniformity of the system; at least, it does not affect the same in any material respect, or in any manner prohibited by the constitution. The courts will not hold, and ought not, that acts of the legislature are unconstitutional, unless they are clearly so. If there is room for reasonable doubt, the validity of the act should be asserted and sustained."

From these cases it is not difficult to deduce a rule that, under the constitution as it existed when the foregoing cases were decided, even a special law creating an additional office in a county, the incumbent of which performs part of the duties elsewhere and under general statutes performed by the county board, will be valid if the functions and duties of such additional office are under the control of the county board, and there may exist in the judgment of the legislature reason-

able ground for considering the general law as to this particular county impracticable.

Third.  *Cases relating to salaries of county officials.*  Ch. 177, Laws of 1875, required the board of supervisors of Milwaukee county to pay the county treasurer $3,000 per annum in addition to his salary for the purpose of enabling him to employ such clerks and assistants as should be necessary. At the same time the general statutes required the county board to fix the salaries of county officers before their election and prohibited increase or diminution of salary during the official term.  It was held that this latter regulation was part of the system of county government, and that the special law applicable to the county treasurer of Milwaukee county violated its uniformity.  *Rooney v. Milwaukee Co.* 40 Wis. 23 (1876).  The opinion contains this language:

"The legislature has no power needlessly and materially to impair the practicable uniformity of the one system of town and county government required by sec. 23, art. IV."

But where a law providing for a change of compensation of the sheriff was general and applied in terms to all counties whose boards chose to act under it, although the same general laws with reference to increase or diminution of salary were in force, the law was held valid.  Observe that the law so held valid was general in its terms, but action under it was optional, so that the result would be lack of uniformity when some counties acted under this law and some did not.  The court said, among other things:

"The mere fact that the county board of any county may make such change in the method of compensating sheriffs does not interfere with such uniformity.  *Verges v. Milwaukee Co.* 116 Wis. 200, 93 N. W. 44.  The decision in the *Rooney Case,* cited, was under an act relating to a particular county.  *Rooney v. Milwaukee Co.* 40 Wis. 23.  *State ex rel. Peck v. Riordan,* 24 Wis. 484, cited, was similar in that respect."  *State ex rel. Sommer v. Erickson,* 120 Wis. 435, 98 N. W. 253 (1904).

From this we are authorized to infer that, where the law is general in terms and provides for a class of counties where conditions justify a departure from absolute uniformity, some reasonable departure from uniformity will be upheld in matters which are conceded to be parts or functions of county government.

Fourth. *Cases relating to the building of bridges or viaducts.* In *State ex rel. La Valle v. Sauk Co.* 62 Wis. 376, 22 N. W. 572, it was held that a law requiring county boards to levy a tax in certain cases for the purpose of building a bridge, and providing that it should apply to all counties in the state except the county of Grant, was invalid as contravening sec. 23, art. IV, Const. The court held that the effect of the act in question was to relieve all the towns in the state outside of Grant county from the expense of erecting and maintaining the bridges specified in the act, while it cast all the burden of doing so upon other counties, and that therefore the act was invalid. In *Wagner v. Milwaukee Co.* 112 Wis. 601, 88 N. W. 577, suit was brought to restrain the county, its supervisors and officers from proceeding in the matter of constructing a certain viaduct and from issuing, selling, or disposing of bonds for that purpose. The county was proceeding under ch. 310, Laws of 1899, which authorized the county board of supervisors of any county within this state to alter, erect, construct, and maintain any viaduct not less than 1,000 feet in length, the cost of construction of which, together with the right of way therefor, shall not be less than $80,000, over and across any gully, river, valley, etc., for the purpose of connecting two or more highways, etc. This act provided for the issue of bonds of such county for the purpose of raising money, but the amount of bonds so issued should not exceed a sum equal to one fifth of one per cent. on the value of all the taxable property of said county as determined by the last assessment and equalization for state and county taxes. The act was challenged on several grounds. It was held that the

particular designation of assessed valuation, percentage, and amount pointed out Milwaukee county, it being the only county in the state answering the description, and that the act was special, and it was said:

"We must hold that the act in question is local and special, within the meaning of the provision of the constitution quoted. Moreover, it attempts to give to the county of Milwaukee powers of local government not possessed by any other county in the state, and hence it is repugnant to sec. 23, art. IV, Const."

But in *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071, another suit was brought to enjoin the issue and sale of county bonds of Milwaukee county authorized and attempted to be issued for the purpose of building this same viaduct. The bonds were about to be issued under the provisions of ch. 444, Laws of 1903 (secs. 697—32–44, Stats.: Supp. 1906), which was a law passed after the failure to build consequent upon the decision in *Wagner v. Milwaukee Co., supra.* Ch. 444, Laws of 1903, however, expressly applied to any county within this state "which now has or may hereafter have, according to any state or national census taken, a population of 150,000 or more." It also, unlike the act construed in *Wagner v. Milwaukee Co., supra,* omitted any detail pointing out a particular county. It is noticeable, however, that it was limited in its operation to counties having a population of 150,000, and was therefore not uniform throughout the state, but only uniform as to a certain class. The briefs of counsel called the attention of the court to sec. 23, art. IV, Const., but the court does not mention that section of the constitution in its opinion. The opinion does, however, hold the act valid, refuses to enjoin the issue of the bonds, and says:

"Classification of cities by population, and the enactment of general laws for each class according to its needs, has been so often approved by this court that it has become part of the fundamental law of the state. *State ex rel. Risch v. Trustees,*

121 Wis. 44, 98 N. W. 954. No good reason is perceived why the same considerations in a somewhat modified degree, perhaps, do not justify classification of counties by population as well as cities. Indeed, this court has affirmed the validity of an act providing for the payment of a salary to registers of deeds in lieu of fees in all counties containing a population of 150,000 or upwards, on the ground that the classification was proper, and hence that the act was a general act, and not private or local. *Verges v. Milwaukee Co.* 116 Wis. 191, 93 N. W. 44. While the subject of classification was not discussed at length in this case, it is manifest that it could not have been decided as it was, except on the basis that the classification of counties by population, in legislation relating to the payment of a salary in lieu of fees to the register of deeds, was proper because germane to the subject; the idea doubtless being that in a populous county, where many real-estate transfers are made, the fees provided by law would furnish an extravagant compensation to the register, while in small counties, where the transfers are few in number, the fee system would afford simply a reasonable compensation."

When we reflect that in *Verges v. Milwaukee Co., supra,* the question whether the law there under consideration was valid under sec. 23, art. IV, Const., was raised and decided, and when we reflect that the mandate of the constitution prohibiting the incorporation of cities or the amendment of their charters is much more direct and positive in its inhibition than sec. 23, art. IV, Const., the decision in *Bingham v. Milwaukee Co.* is very significant to indicate that the legislature may by general law applicable to a class of counties bring about changes in county government in particulars where it is not practicable to carry on such government in that particular class of counties in the same manner in which it is carried on in other counties outside of that class.

Fifth. *Cases determining what official acts are and what are not functions of town or county government within the meaning of sec. 23, art. IV, Const.*

*Within the constitutional provision:* Superintending the

building of a courthouse. *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339. Audit and allowance of claims against a county. *State ex rel. Walsh v. Dousman,* 28 Wis. 541. Fixing salaries of county officers. *Rooney v. Milwaukee Co.* 40 Wis. 23; *Verges v. Milwaukee Co.* 116 Wis. 191, 93 N. W. 44; *State ex rel. Sommer v. Erickson,* 120 Wis. 435, 98 N. W. 253. Expenditure of local highway taxes. *McRae v. Hogan,* 39 Wis. 529. Building bridges or viaducts. *State ex rel. La Valle v. Sauk Co.* 62 Wis. 376, 22 N. W. 572; *Wagner v. Milwaukee Co.* 112 Wis. 601, 88 N. W. 577; *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071. Levy of special tax to pay bounty. *State ex rel. McCurdy v. Tappan,* 29 Wis. 664.

*Not within the constitutional provision:* Exchange of lands and tax certificates of the county for shares of stock in a railroad corporation. *Single v. Marathon Co.* 38 Wis. 363 (1875). The organization, vacation, or change of boundaries of towns within the county. *State ex rel. Graef v. Forest Co.* 74 Wis. 610, 43 N. W. 551. The drainage of swamps and marshes. *Bryant v. Robbins,* 70 Wis. 258, 35 N. W. 545. The creation and division of counties by the legislature and the adjustment of the respective rights and liabilities of the new and old counties. *Forest Co. v. Langlade Co.* 76 Wis. 605, 45 N. W. 598. Laws regulating the sale of intoxicating liquors. *Rock Co. v. Edgerton,* 90 Wis. 288, 63 N. W. 291. Powers new and unusual not constituting any part of the ordinary general powers of such local organizations. *State ex rel. Marinette, T. & W. R. Co. v. Tomahawk C. C.* 96 Wis. 84, 85, 71 N. W. 86, and cases cited.

Sixth. *Cases which expressly recognize a measure of discretion in the legislature to determine how far uniformity in the particular case is practicable. State ex rel. Peck v. Riordan,* 24 Wis. 484; *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339; *State ex rel. McCoale v. Kersten,* 118 Wis. 287,

95 N. W. 120; *State ex rel. Grundt v. Abert,* 32 Wis. 403; *State ex rel. Sommer v. Erickson,* 120 Wis. 435, 98 N. W. 253; *Cathcart v. Comstock,* 56 Wis. 590, 14 N. W. 833; *Rooney v. Milwaukee Co.* 40 Wis. 23.

Seventh. But there is further observable in several well-considered decisions of this court a distinction between uniformity in the rule of law declared by the legislature and uniformity in its adoption by the smaller subdivisions or in its operation upon such subdivisions. This is similar to the question which was before the court in *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869, with reference to the stricter provisions of secs. 31, 32, art. IV, Const. The most noteworthy of this class of cases arising under sec. 23, art. IV, Const., is *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482 (1889). In order to understand the force and effect of the case last cited it must be kept in mind that at the time referred to in that decision there were in force in the Revised Statutes of this state two separate and complete systems of local government, one for the government of towns and one for the government of villages: ch. 38 and ch. 39, R. S. 1878, relating to towns, and ch. 40, Id., relating to villages. The powers of the village board of trustees were much more extensive than those of the town board of supervisors. Ch. 292, Laws of 1883, a law general in form, provided that all the powers relating to villages and conferred on village boards by ch. 40, R. S. 1878, except those in conflict with the town laws, should be exercised by the town boards in those towns which contained within their boundaries one or more unincorporated villages of 1,000 population or greater. The effect of this act was, of course, that towns within the boundaries of which were one or more unincorporated villages of 1,000 inhabitants had a system of government not uniform with other towns in the state having within their boundaries no unincorporated villages or an un-

incorporated village or villages of less than 1,000 population. The court said:

"It is also argued that ch. 292, Laws of 1883, violates the provisions of sec. 23, art. IV, of the constitution, which provides that 'the legislature shall establish but one system of town and county government.' And we are informed that the learned circuit judge in sustaining the injunction in this case was of the opinion that the act was a violation of the said sec. 23, art. IV. We think the learned circuit judge was mistaken in his opinion. Ch. 292, Laws of 1883, is an amendment of the laws concerning towns and the government thereof. Like many other laws of the state, it provides for the exercise of different powers by the boards of different towns, when there is anything in a town which calls for the exercise of such different or additional powers. The act is as general as any other general act. It provides for the exercise of the additional powers in all towns in which villages are situated having a given number of inhabitants. It is not subject to the criticism that, though general in form, it is special in fact, as it is a matter of public notoriety that there are and have been several towns in the state to which the act can be applied. To hold that this section of the constitution requires the legislature to make all laws for the government of towns applicable to every town in the state, without any regard to the wealth, population, or other peculiarities of such towns, would be to hold a very large portion of the legislation on the subject of towns in this state unconstitutional and void. As instances of these laws, see sec. 1240, R. S. 1878, in regard to the assessment of highway taxes, and sec. 1320, in regard to building bridges. It is clear that the act in question is not a violation of the system of town government, but a part of the system, in order to adapt the system to the peculiar wants of certain towns in the state."

To the statutes instanced by Justice TAYLOR in the opinion last quoted we might add sec. 670, Stats. (1898), and also sec. 32, ch. 28, R. S. 1849, the same as Stats. (1898), sec. 1519; and see *Mappes v. Iowa Co.* 47 Wis. 31, 1 N. W. 359, *Milwaukee Co. v. Sheboygan,* 94 Wis. 58, 68 N. W. 387, and *Juneau Co. v. Wood Co.* 109 Wis. 330, 85 N. W. 387. But

the *ratio decidendi* of the case of *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482, is that by a general law applicable to all towns of a certain class, such as towns having within their boundaries one or more unincorporated villages, the legislature may prescribe for such towns in that class quite a different form of the same general system of town government. See, also, *Jones v. Kolb,* 56 Wis. 263, 14 N. W. 177. This phase of the question is also touched upon in *State ex rel. Sommer v. Erickson,* 120 Wis. 435, at page 442 (98 N. W. 255), where the court said:

"As indicated, the act applied to every county in the state. The sheriff was elected the same as before. His subordinates were appointed the same as before. The office was administered the same as before. Absolute uniformity is not required. The system is only to be 'as nearly uniform as practicable.' The mere fact that the county board of *any* county may make such change in the method of compensating sheriffs, does not interfere with such uniformity. *Verges v. Milwaukee Co.* 116 Wis. 200, 93 N. W. 44. The decision in the *Rooney Case,* cited, was under an act relating to a particular county. *Rooney v. Milwaukee Co.* 40 Wis. 23. *State ex rel. Peck v. Riordan,* 24 Wis. 484, cited, was similar in that respect."

We have taken the liberty of italicising the word "any" in the above quotation. The cases therein cited bear out the views expressed in the quotation. It would seem from *State ex rel. Graef v. Forest Co.* 74 Wis. 610, 43 N. W. 551, that this must be the necessary construction of a constitution which by sec. 22 of art. IV authorizes the legislature to confer upon the boards of supervisors of the several counties of the state such power of a local legislative and administrative character as they shall from time to time prescribe, which necessarily presupposes discretion on the part of the board of supervisors to exercise the delegated legislative power conformably to local wants and local peculiarities, and also contains the section in question here, which restricts the legisla-

ture to the establishment of one system of town and county government as nearly uniform as practicable. In the case last cited it must have appeared from sec. 670, R. S. 1878, that the general laws of the state authorized the several county boards to set off, organize, vacate, and change the boundaries of the towns in their respective counties, and at the same time apparently destroyed the uniformity of this power by limiting its exercise in certain counties therein named, and the act in question in *State ex rel. Graef v. Forest Co., supra,* provided that none of the towns in Forest county should be divided, vacated, or have the boundaries thereof changed by the board of supervisors until the question was submitted to a vote of the legal electors of the town or towns to be vacated and decided affirmatively by a majority of such electors. In the opinion attention is directed to the form of the first sentence of sec. 670, which, however, does not appear to be materially different in this regard from subd. 6, sec. 669, Stats. (1898).

With this *résumé* of cases on this subject in mind we take up the act in question, first recalling the rule of construction as follows:

"It is only when the unconstitutional purpose is clear beyond a reasonable doubt that a court can be justified in declaring void an act of the legislature. *Att'y Gen. v. Eau Claire,* 37 Wis. 400, 438; *Johnson v. Milwaukee,* 88 Wis. 383, 389, 60 N. W. 270; *Verges v. Milwaukee Co.* 116 Wis. 191, 198, 93 N. W. 44." *Nash v. Fries,* 129 Wis. 120, 108 N. W. 210.

We must also bear in mind that in ordinary investigations regarding the constitutionality of a statute we have an express interdict in the constitution more or less clear in its terms, while in the case at bar we have first the peculiar language of sec. 23, art. IV, Const., allowing for considerable discretion on the part of the legislature, and making it unusually difficult for a court to pronounce an act unconstitu-

tional because it is not a mere measure of the language and meaning of the statute against the language and meaning of the constitution, but also a determination of the mixed question that uniformity in the given case was and is practicable; and second, we have the rule of interpretation of statutes reinforced by the mandate of constitutional interpretation, both of which command us to find harmony, not conflict, between the provisions of sec. 669, Stats. (1898), relating to the general powers of the county board, and ch. 94, Laws of 1905 (secs. 697—45–49, Stats.: Supp. 1906). Former decisions of this court referred to in this opinion settle the law for this state that the mere enactment by the legislature of a law relating to town or county government is not conclusive upon the proposition that the general law was impracticable in the particular case. The first test of the constitutionality of ch. 94, Laws of 1905, must be found in the inquiry whether or not it displaces or conflicts with general governmental powers given to county boards generally. If we find that it does not, that ends the inquiry and resolves the question in favor of the constitutionality of the law. If we find that it does so take away, supersede, and confer on others some of such general powers of county boards, we then inquire whether in the judgment of the legislature the general system might reasonably have been considered impracticable in the particular case or class of cases and with reference to the particular powers so modified, superseded, or taken away. We next consider whether in the judgment of this court, resolving all reasonable doubts in favor of the validity of the act, the general system was practicable to cover the particular case. If we are not satisfied that the general system was practicable in the particular instance, we must hold the law valid, although it takes away from the general powers of the board.

From official documents which we may judicially notice, Milwaukee county had at the census of 1900 a population of

330,000, considerably more than one seventh of the population of the state. Its population is about eighty-six per cent. urban and fourteen per cent. rural. It contains, as compared with other counties, an unusual proportion of wage earners who are liable by reason of accident or the disasters of life to become a public charge. It has fifty members in its county board, and its annual expense for support of the poor is more than $165,000. Ch. 94, Laws of 1905 (secs. 697—45—49, Stats.: Supp. 1906), applies to all counties now having or which may hereafter have a population of 250,000 or more. It requires the county board of supervisors in such county to elect by ballot five trustees for the terms therein specified and provides that each trustee shall qualify by subscribing an oath, shall execute a bond, and shall receive a fixed compensation. The trustees may for misconduct or neglect of duty be removed from office by the county board of supervisors.

"Said board of trustees when appointed and qualified shall have the same power in all matters relating to the care and support of the poor in such county as is now vested in the county board and shall have the entire management of the county hospital, county farm, almshouse and waterworks and the department of outdoor relief, and the entire management of the support and relief of poor in such county. They shall let all contracts and make all purchases for whatever may be necessary to maintain and, from time to time, improve said institutions and maintain, support and care for the poor in such institutions and shall audit all accounts therefor." Sec. 2, ch. 94, Laws of 1905 (sec. 697—46, Stats.: Supp. 1906).

The power of the board of supervisors under sec. 669, Stats. (1898), is not in any particular expressly taken away, but that section stands as law so far as it may stand consistently with sec. 6, ch. 94, *supra,* which merely provides that "all acts or parts of acts in conflict with the provisions of this act are hereby repealed." We would not be justified within the rule of constitutional interpretation above quoted in construing ch. 94 to conflict with or displace the powers granted

to the county board under sec. 669, Stats. (1898). Aside
from the constitution, the rules of statutory construction re-
quire us to harmonize these statutes if possible. Considering
the constitution, ch. 94, Laws of 1905, must yield at every
point where yielding will maintain its constitutionality and
do no violence to its terms. The care and support of the poor,
the management of the county hospital, poor farm, alms-
house and waterworks, and the department of outdoor relief,
and the entire management of the support and relief of the
poor in such county may, and do, relate to the administrative
work necessary in such matters. The letting of contracts and
making purchases, the improvement of the institutions men-
tioned, and the maintenance, support, and care of the poor
in such institutions and the auditing of the accounts there-
for refer to like administrative duties. The words of the
act will bear that construction. Indeed, this is their more
natural import. These trustees have the power to appoint
three superintendents of the poor, and it is the accounts of
their appointees and the disbursements under their admin-
istration that they are required to audit as well as their own
expenditures and accounts. The county board, in the ab-
sence of this law, would necessarily have to transact all such
business through a committee appointed · from among its
members. Sec. 668, Stats. (1898). This committee would,
generally speaking, have the power of the county board in
the administration of the affairs of the institutions men-
tioned. This committee would let all contracts and make all
purchases, and do all the things mentioned in sec. 2 of said
act of 1905 (sec. 697—46, Stats.: Supp. 1906), and yet so
long as sec. 669, Stats. (1898), was in force that committee
would be subject to the general control and management of
the county board itself.

It is quite possible to put a construction on this law that
will bring it in conflict with the powers of the county board
under sec. 669, *supra*. But that construction would resolve

all doubts against the constitutionality of the law instead of in its favor.   Under sec. 4 of the act in question the board of trustees is required to file with the county clerk an annual report, together with the reports of the superintendents of the said county hospital, county farm, almshouse, and water-works and department of outdoor relief, including an itemized statement of receipts and disbursements for the year ending on the last day of September in each year, and also a classified statement of the same and an estimate of the appropriations needed for the ensuing year.   The county clerk is required to lay such reports and statements before the county board and shall have the *entire* management of the board has jurisdiction, power, and authority to examine, allow, approve of or disapprove of, under the rules of law, the disbursements and estimates of the trustees.   Otherwise why are the itemized statements of receipts and disbursements required to be laid before the county board having the powers found in sec. 669, Stats. (1898)?   The county board is required to make such sufficient appropriations annually in advance for the support, maintenance, salaries, repairs, and improvements of said county hospital, county farm, almshouse, and waterworks and department of outdoor relief and district physicians.   This adds nothing substantial to their former duty, which, by necessary implication, required them to do likewise.   Under this law there still remains with the county board a reasonable discretion as to the amount necessary for such purposes, and this conclusion is supported by the form of the statute, which requires the trustees to file, for the purpose of presentation to the county board, an estimate of the appropriations needed for the ensuing year.   There is nothing in the statute making this estimate conclusive upon the board.   It is advisory only, and, had the legislature intended that it was otherwise, something more than an estimate would have been required, and some provision inserted making it mandatory upon the county board to levy.

that specific amount. Under this act the county board still
retains the power "to examine and settle all accounts of the
receipts and expenses of the county, and to examine, settle
and allow all accounts, demands or causes of action against
such county; to apportion and order the levying of taxes and
direct the raising of such sums of money as may be necessary
to defray the county charges and expenses." Sec. 669, Stats.
(1898). The amount of money raised by the county board
for this purpose comes into the hands of the county treasurer.
It is paid out by him upon warrants signed by the president
and secretary of the board of trustees, but all such payments
will appear in the annual account required to be filed by sec.
4 of the act, and the requirement that the accounts be pre-
sented to the board shows they are subject to audit, and, if
illegal, to disallowance, by the county board.

The general framework of this act is very like that of ch.
509, P. & L. Laws of 1868, under examination in *State ex
rel. Grundt v. Abert,* 32 Wis. 403. The substantial differ-
ence between the acts is that the law of 1868 provided ex-
pressly that the officer should have the general charge and
management of the poor in said county under the control
of the board of supervisors, while in the case at bar such con-
trol of the board of supervisors arises by necessary implica-
tion from the fact that there is no express repeal of the gen-
eral statutes, secs. 669 and 670, conferring powers on the
county board, that these statutes and ch. 94, Laws of 1905
(secs. 697—45–49, Stats.: Supp. 1906), may stand together,
and from the rules of law which require us to so hold un-
less the statutes are irreconcilable beyond reasonable doubt.
This consideration is further strengthened by the rules de-
duced from the preceding cases, that if the functions and
duties of the additional office are under the control of the
county board, or there may exist in the judgment of the leg-
islature reasonable ground for considering the general law
as to this particular county or counties of this class imprac-

ticable, the law may be held valid. Where the law is general in its terms and provides for a class of counties where conditions justify a departure from absolute uniformity, reasonable departure from uniformity will be upheld. A general law applicable to a class of counties may bring about changes in county government in cases where it is not practicable to carry on such government in that particular class of counties in the same manner in which it is carried on in other counties outside of this class. We are unable to say that conditions in Milwaukee county do not require some departure from the general plan, nor that the law in question transcends the power of the legislature in these particulars; whence it follows that the judgment of the court below should be affirmed.

*By the Court.*—The judgment appealed from is affirmed, with costs.

Cassoday, C. J. (*dissenting*). The constitution of this state declares:

"The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe." Sec. 22, art. IV, Const.

The framers of that instrument, perceiving the confusion and mischief which would naturally result from numerous and diverse forms of local government, wisely declared that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." Sec. 23, art. IV, Const. This is an express limitation upon the power granted to the legislature by the previous section quoted. Such limitation confines the legislative power on the subject to "the one system, which is to be as nearly uniform as practicable. It is that [system] which is to be protected against legislative encroachment. This system, which is to be thus guarded, is nothing more nor less

than the plan or scheme by which the town and county are to be governed." *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614, 623, 14 N. W. 844. Thus it was held by this court nearly forty years ago that an act of the legislature providing for eight supervisors in the county of Washington, which, under the general statutes relative to county government, was only entitled to three, was in conflict with the constitutional provision prohibiting the establishment of more than one system of county government. *State ex rel. Peck v. Riordan,* 24 Wis. 484. So it was held about the same time that an act of the legislature which appointed three commissioners "to supervise the erection of a courthouse in the county of Milwaukee" was in conflict with the same constitutional provision and therefore void. *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339. Approving and following those cases, it was soon after held that the provision of the constitution last quoted "is *mandatory,* and the court must declare invalid any enactment in violation thereof;" that "a legislative act which does not impair the unity of the system of town and county government may yet be destructive of its uniformity, and invalid for that reason;" that "an enactment which would deprive the supervisors of one county of any part of the general powers of county government vested in all boards of supervisors by the general statutes of the state, and confer such powers on some other officer or body elected or appointed for the purpose, is in violation of said section, and void;" that an act which "restricts the power of the supervisors of Milwaukee county to act upon claims against the county and enter into contracts in its behalf, without previous action thereon by the county auditor, whose election is therein provided for, or requires a vote of two thirds of the members-elect of such board to allow claims or enter into contracts disapproved by such auditor, is void under the principles above stated;" that, "under this principle, the court" held that the act there under consideration

was "inoperative, and that the person who was elected auditor pursuant to its provisions was not entitled to hold such office." *State ex rel. Walsh v. Dousman,* 28 Wis. 541. So it has been held that an act "which attempts to take from the possession and control of the town officers in Chippewa county a portion of the moneys raised in their town for highway purposes, and intrust its expenditure to the county board, contrary to the general law, violates" the constitutional provision quoted. *McRae v. Hogan,* 39 Wis. 529. So it has been held that an act "relating to county aid in the construction of bridges, and providing that this act shall not apply to the county of Grant, violates" the constitutional provision last quoted. *State ex rel. La Valle v. Sauk Co.* 62 Wis. 376, 22 N. W. 572. So it has been held that an act which attempted to give to the county of Milwaukee powers of local government not possessed by any other county in the state was repugnant to the constitutional provision last quoted. *Wagner v. Milwaukee Co.* 112 Wis. 601, 608, 88 N. W. 577.

The question recurs whether, consistent with the adjudications cited, the act of April 21, 1905, here under consideration, can properly be held to be a valid enactment. Ch. 94, Laws of 1905 (secs. 697—45–49, Stats.: Supp. 1906). It may be assumed that prior to that enactment there was "but one system of town and county government" in force in this state, and that that system was "as nearly uniform as practicable." Certainly there is no claim that the system then in force was not uniform, nor that the act mentioned was intended to make that system more uniform or more practical. The general statutes, under the general head of "County Government," among other things, then provided:

"Each county organized in this state is and shall be a body corporate, and empowered to sue and be sued, to purchase, take and hold real and personal estate for public uses, including lands sold for taxes, to sell and convey the same, to make

such contracts and do such other acts as shall be necessary and proper to the exercise of the powers and privileges granted and the performance of the duties charged upon it, or as shall be conferred by law, and shall so continue until altered by law." Sec. 650, Stats. (1898).

It has been held that the duties thus "charged upon a county are exercisable by its county board." *Washburn Co. v. Thompson,* 99 Wis. 585, 593, 594, 75 N. W. 309. So the statute then declared:

"The powers of a county as a body corporate can only be exercised by the county board thereof, or in pursuance of a resolution or ordinance by them adopted." Sec. 652. See, also, secs. 653, 656, Stats. (1898); *Johnson v. Buffalo Co.* 111 Wis. 265, 269, 87 N. W. 240.

The statutes required the county board of supervisors to consist of the persons therein designated, and that every ward or part thereof of every city and incorporated village should be represented. Secs. 662, 663, Stats. (1898). The statutes also conferred upon the county board of each county fifteen distinct, enumerated, general powers, among which were to examine and settle all accounts, to build and keep in repair the county buildings and to insure the same, to raise necessary moneys to defray the county charges and expenses, to have the care of the county property and the management of the business and concerns of the county, and to purchase land, etc. Sec. 669, Stats. (1898). Prior to the enactment in question such powers, and many others not mentioned, were vested in the boards of supervisors of the respective counties of the state, including Milwaukee county. By thus conferring the same powers on every board of supervisors in the state and subjecting each board to the same requirements, "one system of . . . county government" was secured, and that was "as nearly uniform as practicable."

Is such "one system of . . . county government" broken up, or frustrated, or destroyed by the enactment in ques-

tion? If not, can we say that notwithstanding the enactment the "one system" remains "as nearly uniform as practicable"? In my judgment the act attempts to make, and was manifestly designed to make, a different system of county government in Milwaukee county than exists in any other county in the state, and thereby destroys the uniformity secured by the constitution. It is entitled "An act to authorize the appointment of a board of trustees to *govern and manage* the county hospital, county farm, almshouse, and department of outdoor relief, and to have the care and support of poor" in Milwaukee county. True, such board of trustees are to be elected by the board of supervisors of that county. Such powers, however, are not granted to any other board of supervisors in the state, and the qualifications of the persons to be so appointed trustees are to be such as are not required to be possessed by the supervisors appointing them. Sec. 1, ch. 94, Laws of 1905 (sec. 697—45, Stats. : Supp. 1906). Besides, they may all be from one ward, instead of being a representative body like the board of supervisors.

The second section of the act (sec. 697—46, Stats. : Supp. 1906) provides that the board of trustees so appointed "shall have the same power in all matters relating to the care and support of the poor in such county as is *now vested* in the county board and shall have the *entire* management of the county hospital, county farm, almshouse and waterworks, and the department of outdoor relief and the *entire* management of the support and relief of poor in such county;" that "they shall let all contracts and make all purchases for whatever may be necessary to maintain and, from time to time, improve said institutions and maintain, support and care for the poor in such institutions and *shall audit* all accounts therefor;" that they shall appoint biennially three superintendents, each with the specific powers therein described, "and said board of trustees shall have power to make and

shall make all necessary rules and regulations for the government and maintenance of said county hospital, county farm, almshouse and waterworks and shall prescribe rules for the admission and discharge of patients or inmates, . . . and shall have power to fix and from time to time regulate the salaries of such superintendents, . . . which salaries shall be payable monthly out of the treasury of the county, the same as the salaries of other county officers and employees are paid." Thus it appears that the powers vested in the county board by the general statutes are to the extent mentioned taken therefrom and vested in such board of trustees; that the "entire management," in the particulars mentioned, is taken fron the county board and given to such board of trustees. Of course, such *"entire* management" could not be vested in two separate boards at the same time. So the powers vested in the county board by the general statutes to "let all contracts and make all purchases" and to "audit all accounts" are taken from that board and vested in the board of trustees so appointed. Such board of trustees are required to appoint superintendents and prescribe their duties and fix their salaries which the county is required to pay.

The third section (sec. 697—47, Stats.: Supp. 1906) provides that such superintendents shall take and subscribe an oath, and have power to make rules and regulations and to appoint and remove officers and employees, subject to the approval of the board of trustees.

The fourth section (sec. 697—48, Stats.: Supp. 1906) provides that the board of trustees shall file an annual report of receipts and disbursements for the year and an estimate of the appropriations needed for the ensuing year, and the county board is required to make sufficient appropriation annually in advance for the support, maintenance, salaries, repairs, and improvements therein provided for, and such appropriations must be used for such purposes and subject to the orders of the board of trustees.

The fifth section (sec. 697—49, Stats.: Supp. 1906) provides that the treasurer of the county shall be *ex officio* the treasurer of the institutions therein mentioned and the custodian of the funds, and keep separate accounts thereof, "and pay the same *only* upon warrants signed by the president and secretary of said board of trustees."

Thus the letting of all contracts, the making of all purchases, the auditing of all accounts, the appointment and removal of all officers and employees, the fixing of all salaries, and the making of all disbursements to the extent mentioned are placed under the control, supervision, and management of such new board of trustees, and the funds so provided for are *"only"* to be paid out "upon warrants signed" by its president and secretary. The act seems to negative any remaining powers in the county board in respect to the matters therein provided for, except to "make sufficient appropriation annually in advance" to cover the "estimate of the appropriations needed for the ensuing year." And this seems to be the purpose of the act, for it expressly declares: "All acts or parts of acts in conflict with the provisions of this act are hereby repealed." Sec. 6.

If it be claimed that there are some undefined and unnamed supervisory powers remaining in the county board of Milwaukee county as to any of the matters covered by the act, still it would be true that no other county in the state is provided with such board of trustees, and hence the system of county government in Milwaukee county is, under this act, radically different from that existing in every other county of the state. If the powers conferred upon the several boards of supervisors in the state by the general statutes can thus be divided up and administered by separate boards, as in Milwaukee county, then I perceive no logical reason why such powers may not be divided up and administered by separate and appointive boards in every other county in the state, and in each county pursuant to a different plan or scheme than in any other county.

Obviously the legislative function is an essential and vital part of any system of county government. By the exercise of that function the question as to what policy for the promotion of the public welfare shall be adopted is determined, and this includes necessarily the fixing of the amount of public revenues to be raised, the manner of their expenditure, and the determination as to what contracts on behalf of ·the county shall be made. Prior to this act this function in all counties was placed in the county board, made up of members elected by the people. By this act, under the only construction which seems to me reasonable, a large part of this function is vested in certain trustees in one county only (or, be it conceded, in a class of counties), and not in others. Clearly this is not uniformity. No reason has been suggested why it is not practicable to vest this legislative function in the county board in large counties as well as in small counties, and I know of none. I think, therefore, that this act is clearly in conflict with the constitutional provision requiring uniformity in town and county government.

WINSLOW and DODGE, JJ., concur in the opinion of the Chief Justice.